LEE, Respondent, vs. JENSEN, Appellant.

*January 9—February 6, 1923.*

*Sales: Tobacco crop to be prepared and graded: Contract of sale: Stipulation to agree on damages: Definiteness: Good-faith effort to agree: Mutuality: Recovery for tobacco tendered: Evidence: Sufficiency: Burden of proof.*

1. In an action to recover damages for the failure of the defendant buyer to take and pay for a tobacco crop according to the contract of purchase, which designated prices to be paid for wrappers and binders and for fillers, required the seller to grade the crop, and provided that the buyer should examine it when ready for delivery, and that if the amount of damage could not be satisfactorily agreed upon the seller was to return the money advanced and to surrender the contract, the evidence is *held* not to sustain a finding that the buyer did not in good faith examine the tobacco when ready for delivery to discover if any of it was damaged.

2. A clause in a contract which implies an agreement to agree upon the amount of damages, if it relates to a principal element of the contract, would no doubt, because of its indefiniteness, render the whole contract unenforceable; but if it relates to a subsidiary promise and the principal elements of the contract are clear and definite, it is enforceable.

3. As applied to the subject matter here dealt with, the contract is construed to mean that if on inspection it appeared that tobacco of lower grades was included in that tendered, both parties were obligated to make a good-faith effort to agree on the amount thereof, and if they failed to agree the contract terminated, the term "damage" meaning the amount of tobacco to be deducted from that tendered to make a proper allowance for wrong grading.

4. Under such circumstances, the buyer was released if he made a good-faith effort to agree on the amount of damage and the seller did not.

5. Had the seller made a *bona fide* effort to agree upon the amount of damage and the buyer did not, the seller could nevertheless recover only for the amount of the tobacco tendered which was of the grades specified.

6. The evidence having disclosed that the plaintiff sold the entire crop in the open market as stemming tobacco, and, the purchaser having testified that it was not a No. 1 crop or fit for binders and wrappers, a finding of the jury that there were ·5,787 pounds of good tobacco is set aside.

7. The seller, suing for failure of the buyer to take and pay for the tobacco, has the burden of showing the amount of the stipulated grades tendered.

APPEAL from a judgment of the circuit court for Vernon county: E. C. HIGBEE, Circuit Judge. *Reversed.*

Plaintiff is a farmer and tobacco grower. The defendant is a tobacco dealer. On August 25, 1920, the following agreement was entered into:

"This certifies to the sale of 6 acres, crop of 1920 leaf tobacco, to Leonard Johnson for account of Leonard Johnson. Wrappers and binders in bundles without shingling 35½¢ per lb. Fillers tied in hands and packed in bundles without shingling @ 10¢ per lb. Trash in bales —— @ —— cents per lb. Damaged tobacco —— @ —— cents per lb.

"All the above grades to be stripped and bundled separately. When the crop is ready for delivery the buyer agrees to examine this tobacco on the premises of the seller. If the amount of damage cannot be satisfactorily agreed upon, the seller agrees to return the advance money and surrender this contract at the time of examination. All wet tobacco excluded.

"To be delivered in sound packing condition at Coon Valley about ——. There is no incumbrance on this tobacco.

 · "Received $20.

       "CARL THOMPSON,      HELMER LEE,
            "Buyer.                Seller."

Leonard Johnson referred to in the contract was an agent of the defendant and Carl Thompson was an employee of Leonard Johnson. No question is raised but that the contract was made for and on behalf of the defendant, and throughout the case it is treated as if made directly between the plaintiff and defendant and we shall so treat it.

The plaintiff harvested his crop, sorted and dried it, and prepared it for market. After it had been sorted, stripped, and bundled on or about February 25, 1921, by the plaintiff, and claimed by him to be in condition for delivery, the defendant inspected it, and the defendant claims that the bundles which were tendered as wrappers and binders and fillers contained wet, damaged tobacco, which was unsound and unmerchantable; that the tobacco was not properly graded, in that the bundles tendered as binders and wrappers contained tobacco suitable for fillers and stemming, and in the bundles tendered as fillers was included tobacco suitable only for stemming stock. At the time the defendant examined the tobacco, which was then upon the premises of the plaintiff, the plaintiff was not at home, but shortly after the examination the parties met upon the highway. At such meeting the defendant refused to accept the tobacco unless it should be re-sorted and re-graded or unless a new price could be agreed upon. Plaintiff insisted upon payment of the full contract price for the entire amount of tobacco, and the defendant thereupon announced that he would cancel the contract. In the month of April, 1921, the plaintiff again demanded of the defendant acceptance of the crop at the full contract price, without deduction for damaged tobacco, the defendant refusing to accept delivery under such terms.

It further appears that the defendant offered, in the month of April, 1921, to pay eight cents per pound for the tobacco, which offer the plaintiff refused; that he thereafter sold the tobacco to a third party for seven and a quarter cents per pound; and this action was brought to recover the difference

between the selling price and the contract price. The issues were submitted to the jury upon a special verdict and the jury found:

"(1) Was there on or about the 25th day of February, 1921, any portion of plaintiff's crop of tobacco for the year 1920, graded and bundled by him as wrappers and binders, in sound packing condition?  *A.* Yes.

"(2) If you answer question No. 1 'Yes,' then did that portion of the plaintiff's crop of tobacco, graded and bundled by him as wrappers and binders (other than the eighteen bundles conceded by him to be wet), contain any tobacco which was damaged and not suitable for wrappers and binders and not in sound packing condition?  *A.* No.

"(3) If you answer question No. 2 'No,' then: How many pounds was there of such tobacco?  *A.* 5,787, good tobacco.

"(4) Was there on or about the 25th day of February, 1921, any portion of the plaintiff's 1920 crop of tobacco, graded and bundled by him as fillers, in sound packing condition?  *A.* Yes.

"(5) If you answer question No. 4 'Yes,' then: Did that portion of plaintiff's crop of tobacco, graded and bundled by him as fillers, contain any tobacco which was not suitable for fillers and not in sound packing condition?  *A.* No.

"(6) If you answer question No. 5 'No,' then: What was the weight of the tobacco so graded and bundled as fillers?  *A.* 1,881 lbs. fillers.

"(7) Did the defendant on or about the 25th day of February, 1921, honestly and in good faith examine the plaintiff's tobacco crop for the purpose of determining to what extent, if any, the same was damaged and in unsound packing condition?  *A.* No.

"(8) Was there on or about the 25th day of February, 1921, an honest and *bona fide* disagreement between the parties as to the amount of damaged tobacco in said crop?  *A.* No."

After the verdict the defendant moved that the verdict be amended so as to find the facts as claimed by the defendant and for judgment upon the verdict as amended, and

in the alternative for a new trial. Defendant's motion was denied, plaintiff's motion for judgment on the verdict was granted, and judgment was entered in plaintiff's favor for the sum of $1,679.56, from which the defendant appeals.

R. B. Graves of Sparta, for the appellant.

For the respondent there was a brief by Cowie & Hale of La Crosse, and oral argument by Quincy H. Hale.

ROSENBERRY, J. The defendant contends, first, that the tobacco as graded and bundled by the plaintiff contained damaged tobacco and tobacco below the grades specified in the contract, and that under the terms of the contract he had a right to reject the entire amount tendered; second, that there is no evidence to sustain the finding of the jury as to the amount of sound, merchantable tobacco of the grades specified in the contract.

The first contention involves a construction of the contract. A contract similar to the one here under consideration was construed in Strander v. McIntosh, 169 Wis. 403, 172 N. W. 717, but the questions raised here were not raised in that case. The controversy here turns upon the meaning of the words: "When the crop is ready for delivery the buyer agrees to examine this tobacco on the premises of the seller. If the amount of damage cannot be satisfactorily agreed upon, the seller agrees to return the advance money and surrender this contract at the time of examination." Under this clause the buyer must examine the tobacco upon the premises of the seller. It is undisputed in this case that the buyer did examine the tobacco upon the seller's premises. The jury found, however, that this examination was not made honestly and in good faith, for the purpose of determining to what extent, if any, the tobacco was damaged and in unsound packing condition. The evidence shows quite clearly that the defendant did examine the tobacco on plaintiff's premises and that he found it to be of the grade for which the plaintiff after-

ward sold it. That the contract is upon its face indefinite must be conceded. Much of the indefiniteness, however, disappears when the subject matter dealt with and the method of doing business is fully understood. It is to be noted that the contract is not for a specified amount of goods, of a specified quality, which are contracted to be delivered at a future date. At the time the contract was made plaintiff's crop was growing in the field, it was still subject to all the hazards of damage by the elements, and no one could tell how much tobacco of the contract grades might be produced. The agreement on the part of the defendant was to purchase all the tobacco produced on the six acres during 1920 of the grades specified in the contract. It was further agreed that the plaintiff should harvest, cure the crop because the grades could not be ascertained without curing, strip the tobacco, and bundle the specified grades separately. To do this required the exercise of judgment as to what particular tobacco should be bundled as wrappers and binders and what should be bundled as fillers and what should be excluded as below the contract grades, such tobacco ordinarily being designated as stemming tobacco. When the tobacco was graded and bundled the buyer was to examine it. This examination could only be made for the purpose of determining whether or not he would accept the tobacco as graded by the plaintiff. The contract contemplated that differences of opinion might arise as to the grading of the tobacco. The finding of the jury in response to question No. 7 is clearly not sustained by the evidence. It appears without dispute that the tobacco when sold to a third party was weighed and inspected. It further appears that after the examination made by the defendant on the 25th day of February the plaintiff re-graded and re-bundled some of this tobacco, for it appears that the number of bundles tendered at the time of the sale to the third party as wrappers and binders is less than the number of bundles tendered the defendant on February 25th.

The net weight of the tobacco claimed as binders and wrappers after re-grading was 6,430 pounds. The amount found by the jury of this grade was 5,787 pounds, and although the jury found in response to question No. 2 that there was no wet or damaged tobacco in that bundled by the plaintiff as wrappers and binders, they nevertheless for some reason deduct ten per cent. from the actual weight of the tobacco as to which there was no dispute. The jury found that there was a substantial amount of tobacco tendered as binders and wrappers which was not of that grade. This sustains the claim of the defendant which was at the time of his examination on February 25, 1921, that there was in the bundles tendered to him as binders and wrappers, tobacco that should properly have been put in a lower grade. This shows that the examination made was in good faith and that it disclosed the facts as they existed.

Assuming as we must, in view of the verdict of the jury, that there was in the bundles tendered as being of the contract grades, tobacco of inferior grades, what was the obligation of the defendant under the terms of the contract, which provided that "if the amount of damage cannot be satisfactorily agreed upon the seller agrees to return the advance money and surrender this contract?" This implies an agreement to agree upon the amount of damages, and if it related to a principal element of the contract its indefiniteness would no doubt render the whole contract unenforceable. 1 Page, Contracts (2d ed.) § 89.

It is, however, a subsidiary rather than a principal promise. It relates solely to grading of the tobacco, the grades having a well established and well understood meaning in the trade. The principal elements of the contract are clear and definite; the amount and quality of goods, all those of the specified quality raised by the plaintiff during the season of 1920; price thirty-five and one-half cents per pound for wrappers and binders, ten cents per pound for fillers; place of delivery, Coon Valley; and while the time of delivery

is not specified, there is no dispute but that it was to be delivered within a reasonable time after it was in a deliverable state, which would ordinarily be some time in March or April succeeding the time of the making of the contract; payment to be made on delivery. The principal terms of the contract being definite, it is enforceable.

Certainly the contract does not require the defendant to accept tobacco not of the contract grades merely because it is bundled by the grower with the grades specified in the contract. The term "damage" as used in the contract is somewhat indefinite, but it is apparently used and was understood by the parties to be used in the sense of indicating the amount that should be deducted from the amount tendered in order to make a proper allowance for wrong grading. It was the contention of the defendant that the tobacco tendered was of such an inferior grade that it would not pay to grade it by running it over the table, which appears to be the only way the grades could be accurately established. However, the jury has found against the defendant on that contention. As applied to the subject matter here dealt with, we are of the opinion that the phrase unquestionably meant and was intended by the parties to mean that if upon inspection of the tobacco upon the premises of the plaintiff by the defendant it appeared that there was tobacco of inferior grades in that tendered, the parties should make a *bona fide* effort to agree as to the amount of the non-contract tobacco so included; that if after the making of such an effort the parties were unable to agree, the contract was then to be terminated and both parties released therefrom. Manifestly, good faith is no more required on one side than on the other, and if one party arbitrarily refused to perform he could not complain of nonperformance by the opposite party. Under the circumstances here disclosed, upon tender of the goods by the plaintiff, claiming that the goods tendered were of the contract grades, it would require the defendant, who claimed there was inferior to-

bacco, to make an offer having a reasonable relation to the amount of inferior or damaged tobacco there was in the bundles tendered to him. If there was but a very small percentage and he offered to accept nothing less than a fifty per cent. reduction, that could not be said to be a reasonable offer or a *bona fide* attempt on his part to arrive at an agreement. On the other hand, if the buyer made a proposition to the seller to ascertain the actual amount of tobacco in the bundles of contract grades by re-grading and the seller refused to consider anything less than the total amount tendered, that would not constitute a *bona fide* effort on his part to agree as to the amount of damage and would operate to terminate the contract.

Assuming, as the jury found, that there was in the bundles tendered tobacco not of the grade specified in the contract and a satisfactory agreement could not be reached, then the contract was by its terms at an end and both parties were discharged. We have been cited to and we find no case construing a contract like the one here under consideration or fairly comparable to it. In the absence of the provision which prescribed that the contract, in case of failure to agree, should be at an end, the seller could no doubt recover at the contract price for the amount of goods of the contract grades actually in the bundles tendered; that is, the contract would not be at an end. The grades might be established in other ways; that is, the contract might in that respect be made certain.

Indefiniteness of a subsidiary covenant not a vital part of the contract does not render the contract unenforceable. 1 Page, Contracts (2d ed.) § 105; 1 Williston, Contracts, § 48.

As to contracts which are incomplete by their terms, or where the terms are to be settled by future negotiations and as to the effect of uncertainty as to the subject matter and time in contracts, see 1 Page, Contracts (2d ed.) §§ 87–105; *Goldstine v. Tolman,* 157 Wis. 141, 147 N. W. 7.

This brings us to a consideration of the defendant's second contention, that there is no evidence to sustain the finding of the jury as to the amount of tobacco tendered as wrappers and binders. As already pointed out, the plaintiff sold the tobacco to a third party, at which time it was weighed, and the amount which had been bundled by the plaintiff as wrappers and binders after some re-grading weighed 6,430 pounds. The jury in response to questions Nos. 2 and 3 found that there was no wet or damaged tobacco in these bundles, but deducted from the undisputed amount ten per cent. and so found 5,787 pounds of good tobacco. These findings are inconsistent and cannot stand together. Assuming that the defendant did not make a *bona fide* effort to agree with the plaintiff upon the amount of damage in the tobacco, as that term is hereinbefore construed, and that the plaintiff did make a *bona fide* effort to agree upon the amount of damage, it nevertheless remains true that the plaintiff can recover only for the amount of tobacco tendered which was of the grades specified. The evidence seems to be overwhelming that there was tobacco in the bundles tendered as wrappers and binders which was not of that grade, and one very persuasive fact in that connection is that plaintiff voluntarily, upon the open market, sold the entire crop as stemming tobacco, a grade still lower than fillers. Stemming tobacco is concededly an inferior grade of tobacco. It is hardly conceivable that the plaintiff would have sold his entire crop as stemming tobacco in the open market if it was in fact properly graded or contained an amount of wrappers, binders, and fillers which would have warranted him in re-grading it. In addition to that, the purchaser, who was a witness for the plaintiff, testified that the crop was not a number one crop and not fit for binders and wrappers, but says that it might have been run over the table, meaning thereby that it might have been re-graded. The burden of proof is upon the plaintiff to establish the amount of tobacco of the contract grades

tendered, and we find no evidence in the case from which the jury might say that ninety per cent. or any other per cent. of the amount tendered was in fact of the contract grades. The finding of the jury, therefore, that there were 5,787 pounds of good tobacco tendered, of the grades designated as wrappers and binders, must be set aside.

The trial court submitted the case as if the duty to make a good-faith effort to agree upon the damage rested primarily, if not wholly, on the defendant. The obligation is mutual. One party cannot agree. The defendant claims that the plaintiff insisted at all times that he was entitled to the contract price for the bundles tendered without deduction. If that is true, the defendant was released and the contract was at an end. The issues should be so framed as to find the element of good faith as to both parties as already indicated.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.