BRENNER, Respondent, vs. ARNOVITZ, Appellant.

*November 17—December 8, 1925.*

Sales: Of salvaged building material: Breach by buyer: Failure to accept delivery: To inspect material before shipment: Effect.

1. Where a contract for the sale of iron salvaged from buildings being razed called for its shipment within thirty days, defendant, by not being ready to accept delivery during such time nor at any time offering to accept delivery, breached the contract, sub. (1) and (3), sec. 121.47, Stats., relating to inspection of goods after delivery, not being applicable.  p. 321.

2. The contract providing that all material was to be inspected by the buyer's representative at the point of loading, the buyer was not justified in refusing to accept the material because not of the grade specified, where he did not make such inspection, as the provision relating thereto was proper and reasonable and contemplated the rejection of unsuitable material.  p. 322.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Affirmed.*

The action was brought to recover damages against the defendant for breach of contract.  The case was tried before the court and a jury, and a special verdict was rendered.  Judgment was granted in favor of the plaintiff and against the defendant on such special verdict, and defendant appeals.

For the appellant there was a brief by *Stern & Hersh* of Milwaukee, and oral argument by *Emil Hersh.*

For the respondent there was a brief by *Farr & MacLeod* of Eau Claire, and oral argument by *Arthur W. MacLeod.*

CROWNHART, J.   The plaintiff was salvaging structural iron from various buildings at Barksdale, Wisconsin, which were being torn down.   He entered into a written contract, dated October 26, 1920, with the defendant for the sale of

the iron so salvaged, which the plaintiff agreed to sell and the defendant to buy, delivery within thirty days, sight draft attached to bill of lading, all scrap pipe available, at $12 net ton, f. o. b. Barksdale; all available scrap structural steel, $15 gross ton, f. o. b. Barksdale; all structural steel, being "I" beams and channels, to be straight and in good condition, $30 per gross ton, f. o. b. Barksdale, defendant's representative to superintend the loading.

The plaintiff loaded the scrap iron and shipped the same to the defendant, which was accepted and paid for. However, on November 2d, the defendant wrote to the plaintiff:

"We were advised today by one of the railroads of the arrival of a car of scrap from Barksdale.

"We are somewhat surprised that you loaded any material without first having notified us to have our representative present at the loading, although this was specifically understood in our agreement.

"Kindly do not load any of the other material until further notified by us. We are very much blockaded at the present time."

The plaintiff contended that the scrap iron was not to be inspected, but that the superintendence related only to the steel "I" beams and channels, and plaintiff refrained from loading the steel beams and channels accordingly. The plaintiff, not hearing from the defendant, wrote the defendant on the 13th of November as follows:

"Please give us shipping instructions on the structural iron, and arrange to have your representative here while loading same."

There was no answer to this letter, but *Arnovitz* shortly thereafter went to Barksdale and met the plaintiff. As to what occurred at that time the evidence is sharply in dispute, the plaintiff claiming that the defendant was seeking to buy other materials but failed to furnish a representative to superintend loading, and the defendant claiming that he was urging plaintiff to load the "I" beams and channels

according to contract but that plaintiff refused. The special verdict was to the effect that plaintiff had ready for delivery under the contract 204½ tons of "I" beams and channels; that defendant was not ready during November, 1920, to accept any of said material, and that the market value of such material on the 26th of November was $28.75. Under the evidence these were clearly jury questions. Upon this verdict the court rendered judgment in favor of the plaintiff for $1,400.82 with interest and costs. The court found that the undisputed testimony disclosed that the freight cost from Barksdale to Chicago was $5.60 per gross ton, and that plaintiff was entitled to recover the contract price plus the freight rate to Chicago, less the market value at Chicago, which difference was $6.85 per gross ton, the evidence being undisputed that Chicago was the nearest open market for such material.

The defendant claims that the parties waived the provision of the contract that the defendant would supervise the loading. The evidence is to the contrary. The defendant insisted upon his right to supervise the loading. The defendant further claims that there was no breach of contract shown. The contract called for shipment within thirty days, and the verdict shows that the defendant was not ready to accept delivery during the month of November. The evidence further disclosed that defendant never at any time offered to accept delivery after that time. Defendant cites sub. (1) and (3), sec. 121.47, Stats., to sustain his position. Both of these sections refer to goods after delivery and are not applicable to the facts of this case.

The appellant further contends that he was justified in refusing to accept the material because all of it was not of the grade specified. We take it that that was one of the purposes of inspection, that is, to reject any material that did not fall within the contract. The contract called for inspection at Barksdale, which would be for the benefit of

both parties. The plaintiff would not desire to ship to Chicago materials which would not be acceptable, and the contract provision was therefore proper and reasonable that the inspection should be at point of loading; then any matter of dispute could be settled on the ground. *Lee v. Jensen,* 179 Wis. 468, 472, 192 N. W. 78.

There is no question raised as to the amount of the judgment. Other questions are discussed, but we deem them unnecessary of consideration. The cause was fairly submitted to the jury and the verdict of the jury seems to be sustained by the evidence. The judgment must be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.