STRANDER, Appellant, vs. McINTOSH and another, Respond-
ents.

*May 2—May 27, 1919.*

*Crops: Contracts for sale: Conditions terminating contract.*

1. Sec. 1670$n$, Stats. (ch. 55, Laws 1913), providing that the pur-
   chaser of a crop not ready for immediate delivery shall, when
   it is delivered, pay for its weight at contract price, "without
   regard to the quality or condition . . . at . . . time of delivery,
   unless any inferior quality or unsound condition . . . shall be
   due to the negligence or wilful act of the vendor," and giving
   the seller the right to recover of the buyer double the contract
   price as damages on the buyer's refusal or failure to comply
   with his contract as required by the statute, is, whether consid-
   ered penal or remedial, a statute requiring strict construction,
   when made the basis of a claim for double damages.
2. Said sec. 1670$n$ did not apply to a contract for sale and pur-
   chase, not of the whole of plaintiff's tobacco crop, but of cer-
   tain definite grades or qualities out of his entire crop, leaving
   to the future agreement of the parties allowance for damaged
   tobacco, and providing that, if no such settlement were possi-
   ble, the contract was to be canceled.
3. Ordinarily parties have the same right to agree that on certain
   conditions subsequently arising their contractual relationship
   shall cease as they have to agree on the terms and conditions
   which shall bind them.

APPEAL from a judgment of the circuit court for Rock
county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

December 8, 1915, a written agreement was made between
the parties as follows:

"This certifies to the sale of 4 acres crop of 1915 leaf to-
bacco to C. W. Mooney for account of McIntosh Bros.
Wrappers and binders at 10 per lb.; fillers tied in hand at 2
per lb.; trash at —— per lb.; damaged tobacco at —— per lb.
All the above grades to be stripped and bundled separately.
This crop of tobacco is to be examined in shed by the pur-
chaser before receiving. Should it contain any damaged
tobacco, the amount of damage to be decided upon by mu-
tual agreement. If settlement cannot be made at this time,
contract to be canceled and advance money to be returned to

the purchaser.    To be delivered in sound packing condition at Madison.    There is no encumbrance on this tobacco.    Received $20 in part payment.    C. W. Mooney, Buyer.    *Erick Strander,* Seller."

Subsequently plaintiff commenced this action against the defendants for damages in double the amount of the contract price and based his right to recover under the provisions of ch. 55, Laws of 1913, which now appears as sec. 1670$n$, Stats., and which reads as follows:

"Any person, firm or corporation transacting business in this state, that shall enter into any contract for the purchase of any crop that is not ready for immediate delivery shall in all cases weigh, or cause to be weighed, the crop so purchased, at or before the time such crop is delivered to the purchaser, or to a common carrier at the direction of the purchaser for shipment, and every such person, firm or corporation shall ultimately make payment in full for all of the crop so purchased according to the weight so ascertained and at the price or amount specified in the contract, without regard to the quality or condition of such crop or portions thereof at the time of delivery, unless any inferior quality or unsound condition of such crop shall be due to the negligence or wilful act of the vendor, subsequent to such purchase, and in case any purchaser shall fail or refuse to comply with his contract as provided in this section, the vendor, in action prosecuted by him to recover for any crop sold to such purchaser, shall recover as damages for such failure or refusal, double the contract price of such crop at the weight thereof when ready for delivery and offered to or accepted by the purchaser."

The complaint further alleged that on March 3, 1916, the crop was ready for delivery and offered to the defendants at their weighing station in Madison and that the defendants refused upon request to weigh or cause to be weighed said crop without any objection to the quality or condition of said crop, and that said crop contained no tobacco of inferior quality or unsound condition due to the negligence or wilful act of the plaintiff, and that the defendants failed and re-

fused to comply with their said contract or to accept said to-
bacco or to receive the same.    That the plaintiff ascertained
the weight of said crop and that the same contained 4,152
pounds of wrappers and binders and 624 pounds of fillers,
and that according to the contract the price for such would
be $427.68, being one half the amount sued for, to wit,
$855.36.

The defendants answered alleging that the section above
quoted is invalid, void, and unconstitutional.   They admitted
the purchase of the plaintiff's crop of tobacco of approxi-
mately four acres and that the crop was offered to them on
March 3, 1916, and that they refused to weigh or cause said
crop to be weighed.   They allege that subsequent to the mak-
ing of said contract, at which time the tobacco was hanging
in the plaintiff's tobacco shed and had not been stripped or
bundled, and on or about February 23, 1916, after such strip-
ping and bundling, defendants caused said tobacco to be ex-
amined and found that it had not been stripped and bundled
separately but that damaged tobacco had been included in
the bundles, and that thereupon there was an agreement,
adjustment, and compromise between the parties, as a result
whereof the defendants were to take all of the said crop of
tobacco at six and one-half cents per pound, and plaintiff
agreed to deliver the same to defendants at such price.   That
notwithstanding such agreement the plaintiff, at the time of
offering delivery of the tobacco on March 3, 1916, demanded
payment thereof at the price specified in the contract, and
that when so offered for delivery it was not in sound packing
condition and contained burned or damaged tobacco, and
that, as defendants are informed and believe, such damaged
condition was due to the negligence of the plaintiff.   They
further alleged that they were ready and willing to take the
tobacco at the price agreed upon under the settlement afore-
said of six and one-half cents per pound, but that plaintiff
refused to so deliver such tobacco at such price.

By counterclaim the defendants demanded the return of the $20 paid by them to plaintiff at the time of making of the contract in December.

By stipulation but two questions were submitted to the court: (1) whether the written contract above quoted was within the terms of the statute; and (2) if so, whether such statute was a constitutional exercise of legislative power.

No disposition was made of the disputed issues of fact raised by the pleadings.

The trial court held that the contract was not within the terms of the statute and not subject to its provisions for double damages, and further that the law in question violates constitutional guaranties and cannot be sustained, and directed judgment dismissing the action. From a judgment entered in accordance with the stipulation and such decision the plaintiff has appealed.

For the appellant there were briefs by *Elmore T. Elver* and *Alfred H. Bushnell* of Madison, attorneys, and *J. Henry Bennett* of Viroqua, of counsel; and the cause was argued orally by *Mr. Elver* and *Mr. Bushnell.*

For the respondents there was a brief by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, attorneys, and *J. M. Clancey* of Stoughton, of counsel; and the cause was argued orally by *Mr. Otto A. Oestreich* and *Mr. Clancey.*

ESCHWEILER, J. We are of the opinion that this judgment should be affirmed upon one of the conclusions reached by the trial court, namely, that the contract in this case is not within the purview of sec. 1670n, Stats.

Whether this statute be considered a penal or a remedial one, upon which point we express no opinion, in either event it would from its nature require a strict construction when made the basis of a claim for such damages as is made by the plaintiff herein, and his right to such a remedy as he here asks should be clear.

Upon the stipulation and record herein we must neces-

sarily exclude from consideration any extrinsic facts or circumstances surrounding the making of this contract or any suggested reasons why the same was not carried out, and the only light in which this contract can be viewed is the light that shines forth from the document itself.

Upon the face of this contract we are constrained to hold that it is not such a crop purchase as is the subject matter of the law under consideration. It appears to be a contract for certain definite grade or qualities out of an entire crop. This is evident from the fact that the contract provides that if, in that which shall be subsequently tendered or offered for delivery by the seller to the purchaser, there shall be included damaged tobacco, the amount of damage is to be decided upon by mutual agreement. No specific price is fixed by this contract for such damaged tobacco and we are therefore bound to assume that the parties recognized that there was something else to an entire crop of tobacco than the two grades or qualities upon which the definite prices were fixed and agreed to be paid. That parties have the right to bargain for the purchase and sale of parts of an entire crop instead of the whole cannot well be questioned, and if they content themselves with such a contract the court cannot well make it anything else.

They appear to have agreed to sell and purchase certain definitely described separate, and apparently independent, grades or qualities of tobacco, each at a specified and different price, out of a certain crop raised by the seller on his four acres. The term "crop" is used in the contract. It is, however, a general term and must, so far as this contract is concerned, be controlled by the definitely described grades at specified prices.

The contract further expressly provides for its cancellation in case the parties cannot agree as to the amount of damage that shall arise by such subsequently ascertained condition. Ordinarily parties certainly have the same right to agree that upon certain conditions subsequently arising their

contractual relationship shall cease, as well as they have the right to agree upon the terms and conditions which shall bind them.

This affirmance of the judgment of the court below is solely upon the grounds herein indicated, and is expressly without any determination or intimation upon the other question raised and suggested in this case and also passed upon in the court below, as to whether or not this sec. $1670n$ can be upheld as a lawful exercise of legislative power.

*By the Court.*—Judgment affirmed.