[File No. 6812.]

NANNA M. FUNK and C. E. Branick, Appellants, v. L. R. BAIRD and T. A. Tollfeson, Respondents.

(6 NW(2d) 569.)

Opinion filed November 30, 1942.

*C. H. Starke,* for appellants.

*L. R. Baird* and *J. W. Sturgeon,* for respondents.

CHRISTIANSON, J.  This is an action to quiet title to a tract of land in Stark county in this state.  On June 1, 1929, the land was owned by one Amanda Branick.  On that day she entered into a written contract with the defendants in this action wherein and whereby she sold and agreed to convey the premises to the defendants upon payment by them of the sum of $4,000 as follows:  Five hundred dollars ($500) at or before the execution of the contract, and three thousand five hundred dollars ($3,500) in seven annual instalments of $500 each, payable on the first day of June 1930, 1931, 1932, 1933, 1934, 1935, and

1936. The defendants agreed to pay the taxes on the land, and interest on all deferred payments at the rate of 6 per cent per annum. The defendants entered into possession of the premises upon the execution of the contract and remained in possession up to and including the year 1941.

Amanda Branick died in 1934. Her estate was probated and final decree of distribution entered in 1935, and the plaintiffs have succeeded to and become vested with all the interest of said Amanda Branick in said lands. Funk v. Baird, 70 ND p. 396; 295 NW p. 87.

In January, 1939, the plaintiffs brought action against the defendants for specific performance of the contract. The action was dismissed and relief denied because the plaintiffs were unable to convey to the defendants the title which the contract provided should be conveyed. Ibid.

The complaint alleges that the plaintiffs have an estate or interest in the real property in question; that the defendants claim certain estates or interests in the same adverse to the plaintiffs; that the defendants have been in possession of the premises and have enjoyed the income and benefits therefrom since on or about June 1, 1929; that the amount of income so derived is unknown to the plaintiffs; that the defendants have removed a building from said land, and filled in a well located on the land to the damage of the plaintiffs in the sum of $500. The prayer for judgment is that the defendants be required to set forth their adverse claims, that the superiority and priority thereof be determined, and that the same be adjudged null and void; that plaintiffs' title be quieted as to such claim, and that the defendants be forever debarred from further asserting the same; that plaintiffs recover possession of the premises, and have such further relief as may be just.

The defendants in their answer allege the making of the contract between Amanda Branick, the then owner, and the defendants; that defendants entered into possession of the premises under such contract; that the defendants have made payments on the contract and have paid taxes on the land. They further allege the facts relating to the action for specific performance and the judgment rendered therein against the plaintiffs and in favor of the defendants. They further allege

that on or about February 4, 1939, they discovered that Amanda Branick did not have the fee title in and to said lands, and that she would be unable to convey the title which the contract provided should be conveyed; that thereupon the defendants rescinded the contract and offered to restore to the plaintiffs and to the successors in interest of the vendor in such contract everything of value which they had received upon condition that the plaintiffs and successors in interest of the vendor should restore to the defendants all sums of money paid upon the purchase price of said land and the taxes paid by defendants; and that the defendants offered to account for the use and occupation of the premises, but that the plaintiffs rejected such offer. The defendants further allege that owing to the depreciation in value of farm lands the value of the land in question has depreciated and that it is now worth not to exceed $1,890.00.

The plaintiffs interposed a reply wherein they admit that the contract has been rescinded and canceled and that the defendants are entitled to a return of all sums paid by them upon the contract, after deducting the value of the use and occupation, during the time defendants have had possession, "and the value of the house and well removed or destroyed," as alleged in the complaint.

In their reply the plaintiffs pray judgment that the court take an accounting of the amounts paid by the defendants on the contract and determine the value of the use and occupation of the premises and the damages to plaintiffs by waste committed by defendants, and "that one be set off against the other;" that plaintiffs be given possession of the premises and their title be quieted against all claims of the defendants.

The case was tried to the court upon the issues thus framed. The court made findings as to the amounts paid by the defendants upon the purchase price and for the taxes against the premises; also, as to the value of the use and occupation of the premises and the value of the house removed by the defendants, and the court concluded that there was due to the defendants, after deducting the value of the use and occupation and the value of the building, the sum of $1,206.22 with interest at the rate of 4% per annum from and after February 7, 1939. The court adjudged that the defendants are entitled to and have a lien

upon the premises for the amount so adjudged to be due, and that such lien is prior to the interests or estates of the plaintiffs. The court further ordered that such lien be foreclosed, that the premises be sold, and the proceeds applied in satisfaction of the lien, but that no personal judgment be entered against the plaintiffs.

The plaintiffs have appealed from such judgment and demanded a trial anew in this court.

The only question in controversy on this appeal is the amount which the defendants are entitled to recover. It is undisputed that the defendants are entitled to judgment in some amount and that such judgment is properly made a lien against the land. The amount which the defendants are entitled to recover is predicated solely upon the amount of payments which they have made under the contract for deed, as and for purchase price, and for taxes against the premises. There is no dispute as to the amount of such payments or as to the dates on which they were made. It is undisputed that the defendants made payments on the contract in various amounts and on different dates, aggregating in all $2,514.50; also that they paid taxes on the premises for the years 1929 to 1939 inclusive aggregating in all $417.82. It is also undisputed that the defendants occupied the premises from June, 1929, up to and including the farming season of 1941; and that on February 7, 1939, the defendants rescinded the contract and by formal notice informed the plaintiffs of such rescission and demanded repayment of the sums paid under the contract.

The controversy between the parties concerns the amount that is equitably chargeable against the defendants for the value of the use and occupation of the premises during the time they occupied the same. In determining the value of the use and occupation from June 1, 1929, to February 7, 1939, the trial court applied the general rule, stated by this court in Kicks v. State Bank, 12 ND 576, 98 NW 408, and in Skinner v. Scholes, 59 ND 181, 229 NW 114: "When a contract for the sale of land which the purchaser has paid for and was put in possession of is rescinded for causes free from fraud, the use of the money and the use of the land are held to balance each other."

This general rule is predicated upon the proposition that the parties, by their contract, in effect regarded the use of the land and the use of

the purchase money as equivalent to each other (2 Sutherland, Damages, 4th ed, pp. 2021 et seq, and note at pages 2023, 2024) ; and hence where the purchaser has paid the full purchase price and been placed in possession of the premises and had the full use and profit resulting therefrom, ordinarily the interest on the purchase money paid and the use of the land under the contract will be deemed equivalent, constituting setoffs one against the other. 2 Sutherland, Damages, 4th ed, pp. 2020–2024 and note at pages 2023, 2024; Kicks v. State Bank, supra.

The rights of the parties are governed by equitable principles, and the object of equity in such cases is to restore the parties, as far as may be, to statu quo, and such general rule will not be applied where it will work injustice. 2 Sutherland, Damages 4th ed, pp. 2022–2024 and notes; 2 Warvelle, Vendors, 2d ed, p. 1032. There is nothing arbitrary about this general rule, "and a reasonable discretion should be exercised in its application in view of all the circumstances attending each particular case, the fundamental idea being to place the parties as far as possible in statu quo." 2 Warvelle, Vendors, 2d ed, pp. 1032, 1033.

The measure of recovery in this class of actions is a matter of diverse holding, and in some cases it is difficult to make such adjustment of the conflicting claims "as to accomplish the end to be attained—to do justice between the parties by placing them in the same situation as they were in when the payments were made." A recovery is permitted against the vendor for the money received by him on the ground that it would be unjust for him to enrich himself by retaining money paid under a contract which he had violated. On the other hand, the vendee has received benefits under the contract by the possession of the premises. "The object to be sought by the judgment in the case is to place the parties, as nearly as possible, in statu quo." Kicks v. State Bank, supra.

When a vendee, who has paid the purchase price in full, and has been in possession of and had the full use of the premises, rescinds a contract for the sale of land for causes free from fraud, justice between the parties is generally accomplished by restoring to the vendee the money he has paid without interest, and the land to the vendor without

rents or profits. "But if the purchaser has made valuable and lasting improvements on the land, or if it has suffered in his hands through neglect or mismanagement, then these things are the subject of valuation, account, and final settlement by decree." (12 ND 583, 98 NW 410.) Where a vendee is entitled to rescind, and rescinds a contract on account of defect in the title he may recover the amount of money he has paid under the contract for purchase money and for taxes, with interest, and the amount he has expended for permanent improvements, subject to an equitable deduction or setoff for the use of the premises while in his possession and for any waste that he may have committed. 2 Sutherland, Damages, 4th ed, p. 2025; 3 Sedgwick, Damages, 9th ed, pp. 2124, 2125; 66 CJ pp. 840–843; Kicks v. State Bank, supra; note in 102 ALR p. 874 et seq.; Cox v. Holkeboer, 200 Mich 86, 166 NW 1004; 2 Warvelle, Vendors, 2d ed, pp. 1032, 1092–1095.

In this case, however, the purchase price had not been paid in full when the defendants were put in possession (Taylor v. Porter, 1 Dana (Ky) 421, 25 Am Dec 155, 158; 2 Warvelle, Vendors, 2d ed, p. 1033); nor has it been paid subsequently. Therefore, in order to give effect to the general rule mentioned above, the trial court fixed the value of the use and occupation of the premises during the time the defendants were in possession pursuant to the contract (from June 1, 1929, to February 7, 1939) at an amount equivalent to interest upon the entire purchase price at the rate stipulated in the contract, namely, interest on $4,000 from June 1, 1929, to February 7, 1939, at the rate of six per cent per annum. Such interest amounted to $2,324. The defendants, however, had made payments upon the purchase price aggregating in all $2,514.50. Interest on these payments from the respective dates on which they had been made to February 7, 1939, amounted to $1,042.90, and upon deducting this latter amount from the $2,324 (the interest upon the whole purchase price for the entire period) there was a balance in favor of the plaintiffs on February 7, 1939, of $1,281.10 for the use of the land. The trial court, also, found that the defendants had removed a small house, and thereby caused injury in the sum of $100.00, and that consequently on February 7, 1939, the plaintiffs were entitled equitably to a deduction of $1,381.10 from the amount due the defendants on account of the

payments they had made. The defendants had made payments under the contract, prior to the rescission on February 7, 1939, as follows: —payments of purchase money, $2,514.50, and payment of taxes, $417.82, or $2,932.32 in all. Consequently, upon the rescission of the contract on February 7, 1939, plaintiffs had a cause of action for $2,932.32 subject to an equitable setoff or deduction of $1,381.10, and was entitled to recover for moneys paid under the contract, after allowing the deductions to which plaintiffs were entitled, the sum of $1,551.22.

The defendants continued in possession of the premises after the contract had been rescinded, and were in possession thereof up to the trial of the action in August, 1941. Upon the trial it was stipulated between the parties that the issues "pertaining to the use and occupation of the land involved herein shall be extended so as to include the use and occupation of the property up to the present time" so that all matters in controversy may be disposed of in this action. Evidence was adduced by both plaintiffs and defendants as to the rental and use value of the premises for the years 1939, 1940, and 1941. The trial court found such value to be $115 for each of said years or $345 in all. The court directed that this sum be deducted from the amount that had been found to be owing to the defendants upon the rescission of the contract on February 7, 1939, and that after such deduction there remained due to the defendants on February 7, 1939, the sum of $1,206.22, and judgment was ordered to be entered for that amount with interest at legal rate from February 7, 1939.

Appellants contend that the trial court adopted an erroneous method in computing the "amount paid on the contract," and in computing the "interest on the purchase moneys." The contract provided for interest at the rate of six per cent per annum "upon all sums from time to time remaining unpaid, interest payable annually on June 1st of each and every year." Appellants contend that the several payments made by the defendants should have been applied first in payment of interest then due according to the terms of the contract, and that only the amount of the respective payments remaining after the payment of such interest constituted payments which defendants are entitled to

recover. It is argued that "up to the time the contract was rescinded, February 7, 1939, the terms of the contract must govern the relation of the parties."

These contentions are not well founded. Rescission does not merely terminate a contract, it abrogates and undoes the contract from the beginning. Rescission operates not "merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made." 1 Black, Rescission & Cancellation, 2d ed, pp. 3 et seq.; 17 CJS pp. 924 et seq.; Raasch v. Goulet, 57 ND 674, 223 NW 808; Wall v. Zynda, 283 Mich 260, 278 NW 66, 114 ALR 1521.

Hence, the great principle which governs in cases involving adjustment of counterdemands on rescission is that there shall be "a complete restoration of the parties to the positions they respectively occupied prior to entering into the engagement." 2 Warvelle, Vendors, 2d ed, p. 1031, § 896; 17 CJS p. 925.

The defendants did not occupy the premises as tenants. 2 Warvelle, Vendors, 2d ed, pp. 1036–1038; Snarski v. Washington State Colonization Co. 53 Wash 221, 101 P 839; Ankeny v. Clark, 148 US 345, 37 L ed 475, 13 S Ct 617. They came into possession under a contract for the purchase of the land, and had made no promises, either express or implied, to make any payment as and for rent during the time they were in such possession. They rightfully assumed that they were the equitable owners and that all payments which they made went to liquidate the purchase price, and that when such price was fully paid, the legal title would be conveyed in accordance with the terms of the contract.

The contract did not fail through the fault of the defendants, but through the fault of the vendor.

Upon the rescission the contract was wholly undone, and the parties were returned to their previously existing rights. 17 CJS p. 925. The rights, interests and obligations both of vendor and vendees under the contract ceased to exist. But there remained for adjustment the rights and obligations as they stood upon the undoing of the contract.

The vendees had made certain payments upon the purchase price and for taxes against the land. They had been in possession of the premises and received certain benefits from the use and occupation, and had removed a certain building. The vendees were entitled to recover the moneys which they had paid under the contract for purchase money and for taxes, *together with interest on said several sums,* and they had an equitable lien upon the land for the repayment of the money they had so advanced under the contract. 2 Warvelle, Vendors, pp. 1031, 1032; 2 Sutherland, Damages, 4th ed, p. 2025; 3 Sedgwick, Damages, 9th ed, pp. 2124, 2125; 66 CJ pp. 840–843; Kicks v. State Bank, 12 ND 576, 98 NW 408, supra; Note, 102 ALR pp. 874 et seq.; Cox v. Holkeboer, 200 Mich 86, 166 NW 1004. The claim of the vendees and the equitable lien securing the payment of such claim were subject to an equitable deduction or setoff for the value of the use and occupation of the premises, and the value of the building that the vendees had removed.

Upon the rescission the contract was undone from the beginning, and all past, present and future obligations of the vendees thereunder vanished. The vendees were under no obligation to make any payment under the contract, either for principal or interest, and any sums they might have paid in the past belonged to them and not to the vendor, and they were entitled to recover any moneys which they had paid, subject to an equitable setoff or deduction for anything of value which they had received that in equity and good conscience belonged to the vendor. The vendor or her successor in interest was not entitled to recover or have allowed interest upon the purchase price, or to have past payments allowed and applied as interest. But the vendor and her successor in interest were entitled to offset the value of the use and occupation which the vendees had enjoyed against the claim of the vendees, and the trial court employed the amount of interest upon the purchase price as the measure of the value of the use and occupation. In other words, the trial court determined that the value of the use and occupation was equivalent to the interest upon the purchase price that the parties had fixed at the time the vendees came into possession of the premises.

No question is raised as to the applicability of the rule which the

trial court sought to apply in determining the value of the use and occupation. In their briefs in this court, both appellants and respondents agree that such rule was applicable. The disagreement on the part of the appellants is as to the method utilized by the trial court in computing the amount of payments which the vendees are entitled to recover. The appellants contend that the method utilized by the trial court in making computation results in awarding to the respondents, as and for the payments made by them, more than they are entitled to recover. The respondents, on the other hand, contend that the method adopted by the trial court was correct and did not result in prejudice to the plaintiffs, and that the judgment should be affirmed.

We are unable to agree with the contentions of the appellants. The question presented to the trial court was the adjustment of the counter demands of the parties as they stood upon the rescission of the contract on February 7, 1939. As has been shown, the contract had been wholly undone and the parties restored to their "previously existing rights." The vendees were entitled to recover all moneys they had paid for principal or for interest, *together with interest on such payments,* from the dates on which they had been made. The defendants were discharged from all obligations to pay interest, and this went back to the beginning.

There had been no obligation on the part of the defendants to pay rent or pay for the use of the land at any time; but upon the rescission there arose in favor of the vendor or her successors in interest an equitable claim for the value of the use of the land, which equitable claim they might set off against the claim of the vendees. Such equitable claim, however, was unliquidated and uncertain, until it became liquidated, either by agreement of the parties or by judgment. and there was no valid basis for allowing interest on such claim or any part thereof for any period prior to the rescission of the contract. Comp. Laws 1913, §§ 6070, 6073, 7142, 7143; 33 CJ p. 211; 16 Am. & Eng. Enc. Law, pp. 994, 999, 1018, 1019.

Under the facts established in this case, there is no basis for allowance of interest, on the theory that the defendants, during their occupancy prior to the date of rescission, were obliged to pay an annual rent of $240, and that accordingly they became indebted each year for

such rent; or on the theory that the payments which they made should be considered either payment of interest upon the purchase price or payment of an annual charge for rent or use. The application by the trial court of the general rule announced in Kicks v. State Bank, 12 ND 576, 98 NW 408, supra, seems, under the facts in this case, to have been distinctly favorable to the plaintiffs rather than otherwise.

The appellants have, in effect, abandoned the contention that the allowance made for the value of the house which the defendants removed is inadequate, and the respondents make no claim or demand that the court's findings in this respect be reviewed. In short, both appellants and respondents, in effect, concede that the trial court's decision on this question was correct.

The appellants, also, contend that the allowance made by the trial court for the use of the premises interim the rescission and the trial is inadequate. Evidence was offered by both parties as to such rental value. The evidence naturally involved the opinion of the witnesses, and there was considerable divergence in the estimates of value. The estimates ranged from $100 or $125 for each year to $160 for the years 1939 and 1940, and $200 for the year 1941. The evidence shows that after the AAA and agricultural conservation programs were established the land was farmed in conformity with such programs. Soil Conservation practices, including summer fallowing and seeding of grasses were carried on. True this resulted in certain benefit payments, but it also entailed expenditures looking toward preserving and improving soil fertility. The findings of the court as to the rental or use value of the land from February 7, 1939 up to and including the farming season of 1941 were based upon the testimony of witnesses, who appeared in person and testified before the trial court. These findings of the trial court are entitled to appreciable weight (Christianson v. Farmers' Warehouse Asso. 5 ND 438, 444, 67 NW 300, 302; Donovan v. Johnson, 67 ND 450, 274 NW 124; Buchanan v. Buchanan, 69 ND 208, 285 NW 75), and the record before us discloses no good reason for disturbing them. And when the findings and judgment are considered as a whole, the allowances made to the plaintiffs for the use of the premises and for the house which the defendants

removed from the premises seem to be fair and just to the plaintiffs. Judgment affirmed.

BURR, Ch. J., and MORRIS, NUESSLE, and BURKE, JJ., concur.