[File No. 7090]

SYLVIA McWITHY, Appellant, v. HEART RIVER SCHOOL
DISTRICT NO. 22, a Municipal Corporation, Respondent.

(32 NW2d 886)

Opinion filed June 10, 1948.

*F. E. McCurdy,* for appellant.
*T. F. Murtha,* for respondent.

GRIMSON, District Judge. The plaintiff brought this action for a balance she claims due under a contract with the defendant school district. The contract is admitted. It provided that the plaintiff should teach a school in said district for a term of eight months beginning September 11, 1944, at a salary of $125.00 per month. It further provided that the school might be discontinued at any time in accordance with § 15–2509 ND Rev Code 1943, which provides, in part, that "school may be discontinued when the average attendance of pupils therein shall be less than six for ten consecutive days, . . ."

The plaintiff a qualified grade school teacher duly entered upon her duties in school No. 1 of the district and was paid her salary until December first, 1944, excepting for $5.00 retained each month to guarantee full performance on her part as provided in the contract.

During those three months eight children were in attendance, only seven of whom were of compulsory school age. They belonged to two families and were all the children of school age in the district. One of these families was that of Philip Messer, the President of the school board. The evidence shows that the plaintiff had some difficulties with discipline in her school. In early November she got into a dispute with the son of the president of the school board over a matter of history in which she was clearly right. The son defied her. The father took the son's part. He visited the school and in a rather rough manner told plaintiff he was going to "shut the school and put her out." He claimed his children were not "learning anything" in school. About the 11th of November he took his three children out of school and sent them to school at Richardton, North Dakota. He also visited Mr. Portschiller, the father of the other family

attending school, and told him to keep his children out "for ten days—enough days so the contract of the teacher would be void." In accordance therewith said children were kept out for some days. Then on November 29th the school board met and passed a resolution closing the school on the grounds that the attendance was less than six for ten consecutive days. The evidence does not show that the plaintiff was notified thereof. Shortly after the ten days had expired the five Portschiller children returned to school. Plaintiff continued to teach them the rest of the term. In that she was not disturbed although Mr. Messer knew that she was teaching. She reported to the County Superintendent. Her pupils took the required examinations and passed.

For teaching the five remaining months of this term plaintiff asked $560.75 with interest at four per cent.

The defense is that the school was closed December 1st, 1944, according to the provisions of the contract and the law.

A jury was waived and the case tried to the court. The district court upheld that defense but gave plaintiff judgment for the $5.00 withheld each month for three months and the costs, a total of $49.75. The plaintiff appealed.

The evidence indicates clearly that the cause of the attempted closing of the school was the dissatisfaction of Philip Messer the president of the school board, with plaintiff's conduct of the school and the progress of his children under plaintiff's teaching. He introduced report cards to show their low marks while attending plaintiff's school and their high marks after being sent to the Richardton school. He considered plaintiff was not doing her duty.

The law provides two methods for the removal of a teacher for cause. Sec. 15–3615 ND Rev Code, '43 provides for the rovocation of a teacher's certificate for incompetency. Section 15–2508 ND Rev Code '43, provides for the dismissal of a teacher for violation of contract or neglect of duty. In both cases a hearing is provided and notice thereof must be given the teacher in sufficient time to prepare a defense. Section 15–3616

ND Rev Code '43; Clark v. Wild Rose Special School Dist. 47 ND 297, 182 NW 307. See also 56 CJ 406 and authorities cited in note 91. Any proceeding for the dismissal of a teacher for failure to perform her duty or for removal for incompetency must be brought under one of these provisions. Neither of these methods was used. Instead the school board attempted to close the school under § 15–2509, ND Rev Code '43.

At the time of Messer's first altercation with plaintiff in the school there were eight children in attendance. He took out his own children and provided for the absence of the other children. He testified that at a meeting of the school board he told the other members "we might as well make up our minds to close the school." His testimony continued: "Q. You had made up your mind too? A. Yes. Q. You knew also that if the school dropped below six for ten days the school could be closed? A. Yes. Q. You knew it probably would be closed? A. Yes. . . . Q. And the reason it went below six for ten consecutive days was because you took your children out of school? Is that correct? A. Well, they went backwards, the school had gotten below six. Q. That was the reason it fell below six? A. Yes." This was the school in his neighborhood and where his children attended so that naturally his influence was paramount, and the board passed the closing resolution. Thus, by circumvention the president of the board tried to eliminate plaintiff from the school and to prevent her from carrying out her contract.

The using of a wrong method to discharge a teacher has been held ineffective. In the case of Hull v. Independent School Dist. 82 Iowa 686, 46 NW 1053, 48 NW 82, 10 LRA 273, it is held that where the Iowa code prescribed "the method of discharging a teacher for incompetency, a discharge by any other method is wrongful." See also Barthel v. Board of Education, 153 Cal 376, 95 P 892; People ex rel. Ray v. Davenport, 2 How Pr NS (NY) 17.

When one party to a contract deliberately prevents the other party from carrying it out he cannot use the results of such ac-

tions as a defense against an action for damages brought by the other party. See 2 Williston, Contracts § 677 p 1305; Am L Inst Restatement, Contracts, 438; Amies v. Wesnofske, 255 NY 156, 174 NE 436, 73 ALR 918; Anvil Min. Co. v. Humble, 153 US 540, 38 L ed 814, 14 S Ct 876. That is just what the plaintiff attempted to do.

Section 15–2509 ND Rev Code '43 under which the closing was attempted, provides that in such cases of lack of attendance the school can be closed only "if proper and convenient school facilities for the pupils can be provided in some other school in the territory of the closed school until such time as the school may be reopened by the board. In determining what constitutes proper and convenient school facilities, the board shall consider the distance of each child from the nearest other school and all surrounding circumstances. The board may furnish transportation to the nearest school, or may pay an extra allowance for the transportation, or may furnish the equivalent thereof in tuition or lodging at some other public school."

School boards have only such powers as the statutes confer on them. Pronovost v. Brunette, 36 ND 228, 162 NW 300; Rhea v. Board of Education, 41 ND 449, 171 NW 103. It is the board's duty to administer the affairs of the district as directed by statute. 47 Am Jur 324, Schools. In McCortle v. Bates, 29 Ohio St 419, 23 Am Rep 758, it is stated this way:

"The Board is constituted, by statute, a body politic and corporate in law, and as such is invested with certain corporate powers, and charged with the performance of certain public duties. These powers are to be exercised, and these duties discharged, in the mode prescribed by law."

In Barton v. School Dist. 77 Or 30, 150 P 251, Ann Cas 1917A 252, it is held: "Where power is given a corporation to do an act, and the particular method of its exercise pointed out, the mode is the measure of the power." In 56 CJ 334, it is put this way: "A Board of education, or of directors, trustees, or the like, of school district or other local school organiza-

tion can exercise its powers in no other mode than that prescribed or authorized by statute."

A provision in a contract for the termination thereof upon certain conditions can be enforced only in strict compliance with the terms of those conditions. 17 CJS 889. The contract cannot be arbitrarily terminated. 12 Am Jur 1015, Contracts; Anvil Min. Co. v. Humble, 153 US 540, 38 L ed 814, 14 S Ct 876, supra. "The grounds for termination of a contract under express provisions therein are of course controlled by such provisions which ordinarily will be enforced according to their terms." 13 CJ 606. See also Republic Coal Co. v. W. G. Block Co. 195 Iowa 321, 190 NW 530, 534.

The main and most important duty of a school board is to maintain educational facilities for the children of the district. It is incumbent upon them to do so whether there are more or less than six children of compulsory school age in a district. If there are less than six in any one school for ten days the provision is made in § 15–2509, supra, for the sake of economy, that arrangement may be made to send the children to other schools even outside the district, but it is still made the imperative duty of the board to furnish adequate, convenient and proper school facilities, for every child of school age in the district. A school board must be held to strict performance thereof.

When a school board as an affirmative defense to an action upon a contract like the one at bar, attempts to show that it acted under these provisions of the law, the burden is on it to show, by the preponderance of evidence, that such provisions of the law were strictly followed and that such facilities were actually furnished. 31 CJS 713; 20 Am Jur 142, Evidence.

In the case at bar the evidence shows that the only effort in providing adequate school facilities for the children of plaintiff's school was, according to the minutes, "that motion was made and seconded to pay Philip Messer $8.00 per month transportation. Third, motion was made and seconded to pay John Portschiller $50.00 transportation to haul his children to school

No. 4." There is no record and no showing in the evidence that these motions passed or that these amounts were paid. In fact it must be presumed from the evidence that Mr. Portschiller was not paid, because he did not send his children to school No. 4, but instead continued to send them to plaintiff's school No. 1. There is nothing in the evidence to show that any consideration was given by the board to the distance that the Portschiller children would have to travel to school No. 4; to the roads or any of the surrounding circumstances. The evidence shows that more books were needed at school No. 4, in case the Portschillers attended there but no showing is made that they were furnished. The only real arrangement shown is that Mr. Messer induced the Portschillers to take their children out for ten days so that, as he thought, the school could be closed. The school board in this case has failed to show it followed the statute and that it furnished adequate, convenient and proper facilities for the Portschiller children when it attempted to close school No. 1.

Furthermore, a formal notice to the teacher of the resolution for the discontinuance of a school under the provisions of § 15–2509, supra, is a pre-requisite to the termination of the teacher's contract. 17 CJS 892. In Meyer Mill. Co. v. Baker (Mo App) 10 SW2d 668, it is held that the party having the right to terminate a contract must act in good faith and give reasonable notice to the other party and that "all acts done under the contract by the other party prior to the time of receiving notice of its termination are binding on both parties."

Since the plaintiff received no such notice she was justified in continuing to teach the Portschiller children when they returned and in believing that the threatened closing of the school had been abandoned.

From all the circumstances shown we conclude the plaintiff is entitled to her salary for the whole term as provided by the contract.

The judgment of the district court is modified accordingly and as so modified affirmed. The case is remanded with direc-

tions to the district court to order judgment for the balance due on the contract.

CHRISTIANSON, Ch J., BURKE and GRONNA, District Judges, concur.

NUESSLE, J. I cannot agree with all that is said in the opinion, but I concur in the result.