**RAY COMPANY, INC., Plaintiff and Appellee,**

v.

**Duane JOHNSON, Defendant and Appellant.**

**Civ. No. 10215.**

Supreme Court of North Dakota.

Oct. 20, 1982.

Pringle & Herigstad, Minot, for plaintiff and appellee; argued by Jan. M. Sebby, Minot.

Kinsey & Hope, Crosby, for defendant and appellant; argued by Robert W. Kinsey, Crosby.

PAULSON, Justice.

Duane Johnson [Johnson] appeals from the judgment and injunction order and decree entered by the District Court of Divide County on February 3, 1982, enjoining him from carrying on a heating, plumbing, ventilation and air conditioning business in Williams County, North Dakota. We reverse the judgment and vacate the injunction.

Ray Company, Inc. [Ray] has been in the business of heating, plumbing, ventilation and air conditioning sales, installation and repair in Williston, North Dakota, since August 1973. In January 1976, Johnson became a stockholder in the corporation, acquiring 20 of the 220 total shares of stock in Ray. On January 2, 1976, Johnson, Arthur K. Kittelson and Robert G. Cook, compris-

ing all of the stockholders of Ray, executed a Stockholders' Agreement [Agreement].

The Agreement, which was drafted by the company's attorney, required that Johnson first offer all of his stock to Ray upon termination of his employment with the corporation. It also contained a noncompetition clause which provided that any sale by a stockholder of his stock in the company involved the sale of the interest of the stockholder in the goodwill of the company, and stated that "a Stockholder who sells his stock in the Company will not carry on a similar business to that carried on by the Company within Williams County, North Dakota, so long as the Company (or any person deriving title to the goodwill from it) carries on a like business therein."

The Agreement also contained special provisions relating to the transfer of stock by Robert G. Cook:

"19. *Special Provisions.* The terms of this paragraph 19 shall take precedence over any other conflicting provisions of this contract.

"(a) *Robert G. Cook* is privileged to sell or give (during his lifetime or by Will) any or all of his stock in the corporation to his sons, John Cook and/or Charles Cook, free of the restrictions created by the foregoing provisions of this contract. That is, upon such sale or gift, the Corporation and the other Stockholders shall not have the right to purchase Cook's stock, from Cook, his estate, or from John Cook and/or Charles Cook.

"*In the event of any such transaction, this Stockholders' Agreement shall thereby be rescinded.*" [Emphasis added.]

On May 1, 1976, Robert G. Cook transferred 20 shares of his stock in Ray to his son, John Cook. Johnson remained with Ray until June 13, 1978, when he terminated his employment and sold his shares of stock in the company. Ray waived its right to purchase the stock and Johnson proceeded to sell five shares of his stock directly to Joann Lacher and 15 shares of stock directly to Chuck Cook. Johnson then moved to Crosby, in Divide County, North Dakota, and opened a heating, plumbing, ventilation and

air conditioning business in that community. Since then Johnson has on several occasions performed plumbing services in Williams County. On August 12, 1980, Ray commenced an action to enforce the agreement not to compete and to enjoin Johnson from carrying on a plumbing business in Williams County. The District Court of Divide County ruled that the noncompetition covenant contained in the Agreement was valid and enforceable. The court also, in Finding of Fact IV, found that:

"Notwithstanding a claim by Johnson that paragraph 19 of the 1976 Stockholders' Agreement is ambiguous, the Court finds it clear and unambiguous. It recites a privilege to Robert G. Cook to sell or give any or all of his stock to his sons, free of other Agreement restrictions. Certain transfers from Cook to his son did not cause the Agreement to end."

Finding adequate grounds for injunctive relief, the court enjoined Johnson from carrying on a heating, plumbing, ventilation and air conditioning business within Williams County so long as Ray or any person deriving title to the goodwill from it carries on a like business therein.

Johnson in his appeal contends that the Stockholders' Agreement entered on January 2, 1976, was terminated by the transfer of shares of stock by Robert G. Cook to John Cook; that the noncompetition clause contained in the Agreement is void as a restraint of trade; and that injunctive relief was not an appropriate remedy under the circumstances. Because of our disposition of this case, we need only address the determinative issue: whether or not the Stockholders' Agreement of January 2, 1976, was rescinded by the transfer of shares of stock by Robert G. Cook to John Cook.

In *Sorlie v. Ness,* 323 N.W.2d 841, 844 (N.D.1982), a majority of this court, in construing an ambiguity in a shareholders' agreement, recently summarized the following principles relating to construction of a written contract:

"The construction of a written contract to determine its legal effect is a question

of law for the court to decide. *Metcalf v. Security International Ins. Co.,* 261 N.W.2d 795 (N.D.1978). The determination of whether or not a contract is ambiguous is also a question of law for the court to decide. *Schulz v. Hauck,* 312 N.W.2d 360 (N.D.1981); *Grove v. Charbonneau Buick-Pontiac, Inc.,* 240 N.W.2d 853 (N.D.1976). Pursuant to Section 9–07–04, N.D.C.C., the intention of the parties under a written contract is to be ascertained from the writing alone if possible. If the parties' intentions can be ascertained from the writing alone, without reference to extrinsic evidence, then the interpretation of the contract is entirely a question of law, and this court will independently examine and construe the contract to determine whether or not the district court erred in its interpretation of it. *Metcalf v. Security International Ins. Co., supra; Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894 (N.D.1978). But, if the parties' intentions cannot be determined from the writing alone and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact to be determined by the trier of fact. *Farmers Elevator Company v. David,* 234 N.W.2d 26 (N.D.1975); *Stetson v. Investors Oil, Inc.,* 140 N.W.2d 349 (N.D.1966)."

We have reviewed paragraph 19(a) of the Agreement and find it to be ambiguous. However, we also find that the intention of the parties is ascertainable from the writing alone and conclude that the district court

erred in its interpretation that the May 1976 stock transfer from Robert G. Cook to his son, John Cook, did not cause the Agreement to terminate.

This court has previously recognized that provisions in a contract for the termination[1] thereof upon certain conditions are controlled by such provisions which will be enforced according to their terms. *McWithy v. Heart River School Dist. No. 22,* 75 N.D. 744, 749, 32 N.W.2d 886, 889 (1948). "Ordinarily parties certainly have the same right to agree that upon certain conditions subsequently arising their contractual relationship shall cease, as well as they have the right to agree upon the terms and conditions which shall bind them." *Strander v. McIntosh,* 169 Wis. 403, 407–408, 172 N.W. 717, 718 (1919). *See also City of Fort Collins v. Park View Pipe Line,* 139 Colo. 119, 336 P.2d 716, 720 (1959); *Mc-Donald's Corp. v. Rocky Mt. McDonald's,* 42 Colo.App. 143, 590 P.2d 519, 521 (1979); 17 Am.Jur.2d *Contracts* § 495, at 968–969 (1964); 17A C.J.S. *Contracts* § 399, at 484 (1963).

In construing the provisions of paragraph 19(a), we also note that an ambiguity in a contract is "construed most strongly against the party who prepared it, and who presumably looked out for his best interests in the process." *Farmers Union Grain Terminal Ass'n v. Nelson,* 223 N.W.2d 494, 497 (N.D.1974). *See also* § 9–07–19, N.D.C.C. The first sentence of paragraph 19(a) of the Agreement gives Robert G.

---

1. We are cognizant of the fact that paragraph 19(a) of the Agreement speaks in terms of "rescission" rather than "termination". This court has previously recognized the semantic difference between the two words. *See Fedorenko v. Rudman,* 71 N.W.2d 332, 336 (N.D. 1955); *Funk v. Baird,* 72 N.D. 298, 306, 6 N.W.2d 569, 573–574 (1942). However, in the context of the present case, we note the following observations of Professor Williston in 12 Williston on Contracts § 1454A, at 9–10 (3d Ed. 1970):

" 'Rescind' and 'rescission' are words in ordinary use, and should have no different signification in legal terminology than they have in other connections. 'Rescind' means to abrogate or annul, and may be applied to a

variety of transactions such as a vote, a transfer of property, or a contract.

"When and how such transactions may be rescinded is not part of the definition of the resulting rescission. There are other words by which the result may be described, and whether a contract is spoken of as terminated, abrogated, annulled, avoided, discharged, or rescinded is not in itself important. There are, however, several sources of unnecessary confusion in the use of these common words 'rescind' and 'rescission.' " [Footnotes omitted.]

*See also Illges v. Congdon,* 248 Wis. 85, 95b, 21 N.W.2d 647 (1946); 5A Corbin on Contracts § 1236, at 538–540 (1964).

Cook the privilege to transfer any or all of his stock to his sons John and Charles. The second sentence of paragraph 19(a) beginning with the phrase "That is, upon such sale or gift . . .", clearly refers to the elder Cook's stock transfer privilege contained in the first sentence. The third sentence of paragraph 19(a), set off in a separate paragraph, states that "In the event of any such transaction, this Stockholders' Agreement shall thereby be rescinded." The only logical conclusion is that the "transaction" referred to in the third sentence is the transaction from Cook to one of his sons, and not, as the district court appears to have concluded, to another stockholder's purchase of Cook's stock. It is also clear that the transfer of stock from Cook to his son released Johnson from all provisions of the Stockholders' Agreement rather than from the provisions of only paragraph 19(a). The third sentence refers to termination of the "Stockholders' Agreement", the very title given to the entire instrument.

■ Ray nevertheless argues that the transfer of stock from Cook to his son allowed the other stockholders a privilege to be relieved of the contract terms by "invoking the rescission clause". Because no stockholder "invoked" the rescission clause, Ray argues that the terms of the Agreement remain in effect. Ray further contends that to effectively invoke the rescission clause, Johnson, at the time he sold his stock in the company, should have declared that he was not bound by any provisions of the Agreement. The problem with this argument is that it ignores the express provisions of paragraph 19(a) and the practical implications of the situation. Paragraph 19(a) clearly states that in the event of a stock transfer from Cook to his son, the

Agreement "shall thereby be rescinded". Because the Agreement by its own language terminated automatically upon the transfer of stock, Johnson was under no duty to take any affirmative action. It follows that under the terms of the Agreement Johnson could assume it was rescinded or terminated unless some event occurred which precipitated a need for him to register an objection. No such occurrence appears in the record except Ray's commencement of the instant proceedings.

Ray also appears to argue that Johnson should be estopped from denying the continued existence of the Agreement because, following the transfer of stock from Cook to his son, all parties continued to abide by the original agreement.[2] Ray points to five specific instances of conduct to support its contention: (1) John Cook signed a document making him a party to the agreement as a new shareholder; (2) all parties, including Johnson, signed a periodic amendment of option price terms in March 1977; (3) when Johnson sold his stock and left the company in 1978, specific reference was made to the Agreement in the corporate minutes recording the transactions;[3] (4) Johnson's conduct indicates his acceptance of the contract's restriction on his right to compete because he moved to Crosby, in Divide County, to commence his business; and (5) Johnson consulted an attorney to get an interpretation of the contract language "carrying on a similar business", after Ray complained about his activities in Williams County.

The doctrine of estoppel is set forth in § 31–11–06, N.D.C.C., which states:

"31–11–06. *Estoppel by declaration, act, or omission.*—When a party, by his

---

**2.** Ray's argument in this regard may also be read as an attempt to assist us in construing the ambiguity in paragraph 19(a) by deriving the intention of the parties at the time of contracting through their subsequent conduct. *See, e.g., Battagler v. Dickson,* 76 N.D. 641, 646, 38 N.W.2d 720, 722 (1949); *Baird v. Fuerst,* 60 N.D. 592, 596, 235 N.W. 594, 596 (1931); § 9–07–03, N.D.C.C. However, because we have determined that the ambiguity in the Agreement can be resolved by the writ-

ing alone, we do not consider the extrinsic evidence referred to by Ray in this context. *See Sorlie v. Ness,* 323 N.W.2d 841, 844 (N.D. 1982) and cases cited therein; § 9–07–04, N.D. C.C.

**3.** Although the minutes of the annual meeting of the board of directors and stockholders of Ray state that Johnson was in attendance, Johnson repeatedly denied during trial that he was present at the meeting.

own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

We have previously stated that estoppel may arise from silence as well as from express words. *See, e.g., Norman Jessen & Assoc. v. Amoco Prod. Co.,* 305 N.W.2d 648, 652 (N.D.1981); *Ell v. Ell,* 295 N.W.2d 143, 151 (N.D.1980); *Beck v. Lind,* 235 N.W.2d 239, 249 (N.D.1975). However, this court, in *Hutton v. Korynta,* 218 N.W.2d 177, 180 (N.D.1974), quoted from *Fargo National Bank v. Massey-Ferguson, Inc.,* 400 F.2d 223, 226–227 (8th Cir. 1968), which quoted with approval from *Loff v. Gibbert,* 39 N.D. 181, 188, 166 N.W. 810, 811–812 (1918), as follows:

> "An equitable estoppel arises when one by his acts, representations, or admissions, or *by his silence when he ought to speak out,* intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." [Emphasis added.]

Thus, silence alone will not suffice. It must be accompanied by a duty to speak out, reasonable reliance on such silence and resulting prejudice. It is clear that none of these elements have been met under the circumstances of this case. As noted earlier, no event occurred which precipitated a need for Johnson to speak up and object and therefore he had no duty to speak out. We have examined the record and also find that Ray was not prejudiced by Johnson's silence. The mere fact that Johnson and Ray continued to deal under some sort of informal arrangement between May 1976, when Robert G. Cook transferred stock to his son, and June 1978, when Johnson terminated his employment and sold his stock in the company, does not, in itself, require us to conclude that the terms of the expired formal Agreement continued to ap-

ply. *Cf. Korody Marine Corp. v. Minerals & Chemicals Philipp Corp.,* 300 F.2d 124, 125 (2d Cir. 1962) *(per curiam).* We therefore conclude that the doctrine of equitable estoppel is inapplicable under the facts of this case.

Based on the foregoing, we reverse the judgment of the district court, and, because there is no reason to determine the enforceability of a covenant which by the terms of the Agreement is no longer in effect, *see Economics Laboratory, Inc. v. Donnolo,* 612 F.2d 405, 409 (9th Cir. 1979), we vacate the injunction.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.