**CAVALIER COUNTY MEMORIAL HOSPITAL ASSOCIATION, Plaintiff and Appellant,**

v.

**Wayne KARTES, Defendant and Appellee.**

**Civ. No. 10525.**

Supreme Court of North Dakota.

Jan. 26, 1984.

Price & LaQua, Langdon, for plaintiff and appellant; argued by Robert Q. Price, Langdon.

Cameron D. Sillers, Langdon, for defendant and appellee; argued by Cameron D. Sillers, Langdon.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment entered by the District Court of Cavalier County dismissing the complaint of the plaintiff, Cavalier County Memorial Hospital Association, pursuant to the district court's order granting a motion for summary judgment in favor of the defendant, Wayne Kartes. We affirm.

The Cavalier County Memorial Hospital Association [Hospital Association] is a nonprofit organization engaged in the operation of a general hospital in Langdon, North Dakota. On or about January 30, 1981, the Hospital Association entered into a written contract with Wayne Kartes for the purpose of providing Kartes financial assistance for the completion of a nurse practitioner program at the University of North Dakota. The contract, drafted by an attorney for the Hospital Association, reads in pertinent part as follows:

"WHEREAS, Wayne Kartes, second party, is now enrolled in the Nurse Practioner [Practitioner] Program at University of North Dakota, and will become, upon successful completion of the course and examination a Nurse Practioner;

"WHEREAS, THE CAVALIER COUNTY MEMORIAL HOSPITAL ASSOCIATION, first party, believes there is a need for these services in the community;

"NOW, THEREFORE, to assure the education of the second party to the end that his services as a nurse practioner may be available to the first party:

"IT IS CONTRACTED between the parties as follows:

I. That the first does loan to the second party the sum of four thousand, eight hundred dollars ($4,800.00) to be made in twelve (12) four-hundred dollar ($400.00) payments, the receipt whereof is hereby acknowledged by the second party:

II. That the second party shall repay the money loaned in one of the following methods:

A. IF WAYNE KARTES becomes a nurse practioner, and in that capaci-

ty, returns to one of the clinics affiliated with Cavalier County Memorial Hospital on or about February 15, 1982 to accept employment for a period of one year, there shall be credited upon the debt for the money loaned by the first party, the sum of FOUR THOUSAND EIGHT–HUNDRED DOLLARS ($4,800.00) for the one year period.

B. If the second party does not complete the nurse practioner program or does not return to Langdon to work, the loan funds hereinbefore described shall become due and payable at that time. The loan shall be repaid in twenty-four (24) monthly payments with interest assessed at the current rate when the repayment commences."

A lawsuit was commenced by the Hospital Association against Kartes by service of summons and complaint on July 9, 1982. In its complaint, the Hospital Association alleged that Kartes had completed the nurse practitioner program but had "not worked in the City of Langdon since his completion of the training course." The complaint also alleged that, under the terms of the contract, the loan principal and interest would be deemed paid if Kartes completed his training and "was employed" for a period of one year by a medical clinic affiliated with the hospital; however, if Kartes "did not work as a nurse practitioner in Langdon," he would be obligated to repay the loan. It was further alleged that demand for payment of the loan was made by the Hospital Association, but Kartes refused to make such payment.

Kartes alleged in his answer that he "completed his course of training as a nurse practitioner and presented himself at the Cavalier County Memorial Hospital on or about February 15, 1982, to accept employment for a period of one year." He further alleged that the Hospital Association breached the contract by refusing to employ him as a nurse practitioner and that such breach relieved him of any obligation under the contract.

Both parties filed motions for summary judgment. The motion by Kartes was granted by the district court. Judgment was entered against the Hospital Association on June 23, 1983, and it is from this judgment that the Hospital Association appeals to this Court.

The Hospital Association contends the district court erred in its interpretation of the contract. In its memorandum opinion, the district court determined that the contract was ambiguous because it did not specifically anticipate the circumstances which ultimately arose, i.e., that the Hospital Association could neither utilize nor afford the services of Kartes as a nurse practitioner. The district court determined that the Hospital Association breached the contract by refusing to employ Kartes, and concluded that Kartes was not obligated to repay the loan.

The Hospital Association in its appeal argues that the contract provided that Kartes "shall be employed at one of the *clinics*" and did not require that the *hospital* employ him. It is thus asserted that the refusal of the Hospital Association to employ Kartes was not a breach of the contract. It is also argued that the district court's interpretation of the contract results in Kartes being unjustly enriched at the expense of the Hospital Association.

In *Ray Company, Inc. v. Johnson*, 325 N.W.2d 250 (N.D.1982), we summarized the following principles which relate to the construction of a written contract:

" 'The construction of a written contract to determine its legal effect is a question of law for the court to decide. *Metcalf v. Security International Ins. Co.*, 261 N.W.2d 795 (N.D.1978). The determination of whether or not a contract is ambiguous is also a question of law for the court to decide. *Schulze v. Hauck*, 312 N.W.2d 360 (N.D.1981); *Grove v. Charbonneau Buick-Pontiac, Inc.*, 240 N.W.2d 853 (N.D.1976). Pursuant to Section 9–07–04, N.D.C.C., the intention of the parties under a written contract is to be ascertained from the writing alone if possible. If the parties'

intentions can be ascertained from the writing alone, without reference to extrinsic evidence, then the interpretation of the contract is entirely a question of law, and this court will independently examine and construe the contract to determine whether or not the district court erred in its interpretation of it. *Metcalf v. Security International Ins. Co., supra; Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894 (N.D.1978). But, if the parties' intentions cannot be determined from the writing alone and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact to be determined by the trier of fact. *Farmers Elevator Company v. David,* 234 N.W.2d 26 (N.D.1975); *Stetson v. Investors Oil, Inc.,* 140 N.W.2d 349 (N.D.1966).'" 325 N.W.2d at 251–52 [quoting *Sorlie v. Ness,* 323 N.W.2d 841, 844 (N.D.1982)].

A perusal of the contract reveals that Kartes would receive credit on the debt if he returned "to one of the clinics affiliated with [the Hospital Association] ... to accept employment for a period of one year." We believe that the parties' intentions are ascertainable from the writing alone.

■ It is clear the express intent of the parties was "to assure the education of [Kartes] to the end that his services may be available to the [Hospital Association]." Kartes agreed "to *accept* employment." Construing the word "accept" in its ordinary sense, we note the following definition: "to receive with consent (something given or offered) ..." Websters Third New International Dictionary, 10 (1971). Thus, it can be said at the very least that an agreement to "accept" employment implies that employment is to be offered.

■ We rely, as did the district court, on the proposition that a contract which is ambiguous and not clear should be construed most strongly against the party who

caused the uncertainty to exist—the party "who presumably looked out for his best interests in the process"—which in this case was the Hospital Association. *Ray Co., Inc. v. Johnson, supra; Grove v. Charbonneau Buick-Pontiac, Inc.,* 240 N.W.2d 853, 858 (N.D.1976); *Farmers Elevator Company v. David,* 234 N.W.2d 26, 30–31 (N.D.1975). See also § 9–07–19, N.D.C.C.[1]

■ By interpreting and construing the ambiguous provisions of the contract most strongly against the Hospital Association, we conclude that Kartes complied with the contract when he successfully completed his training and, in effect, tendered his services to the Hospital Association. That neither the clinics nor hospital accepted his employment should not be held against him.

■ The Hospital Association's failure to make such employment available prevented Kartes from accepting employment. There is an implied condition of every contract not to prevent the other party from performing and not to render performance impossible. *Ireland v. Charlesworth,* 98 N.W.2d 224, 233 (N.D.1959). We conclude the district court did not err in its interpretation of the parties' contract.

■ We find no merit in the Hospital Association's argument that the district court's interpretation of the contract results in Kartes being unjustly enriched. The doctrine of unjust enrichment generally rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another. *Jerry Harmon Motors, Inc. v. Heth,* 316 N.W.2d 324, 328 (N.D. 1982). The doctrine serves as a basis for requiring restitution of benefits conferred "in the absence of an express or implied in fact contract." *Midland Diesel Service & Engine Company v. Sivertson,* 307

---

1. Section 9–07–19, N.D.C.C., provides in part: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, ..."

N.W.2d 555, 557 (N.D.1981); *Beck v. Lind,* 235 N.W.2d 239, 250 (N.D.1975).

In our view, the trial court has not abused its discretion in its construction of the contract that Kartes, in effect, complied with the contract. The benefit he received was conferred by the provisions of the express contract. As a general rule, there can be no implied contract where there is an express contract between the parties relative to the same subject matter. 17 C.J.S. Contracts § 5; *Thurston v. Cedric Sanders Company,* 80 S.D. 426, 125 N.W.2d 496, 498 (1963). The Hospital Association received the benefit of the availability of the services of Kartes as a nurse practitioner pursuant to the contract.

The judgment of the district court is affirmed.

VANDE WALLE, PEDERSON, GIERKE and SAND, JJ., concur.