E. E. E., INC., Plaintiff and Appellant,

v.

Esther HANSON, Collection Bureau, Inc., H. R. Arneson, Jr. & Associates, Inc., Commercial Credit Corporation, Aman Collection Service, Inc., and United Accounts, Inc., Defendants,

and

Anneus Meester, Defendant and Appellee.

Anneus MEESTER, Plaintiff and Appellee,

v.

Esther HANSON, Defendant and Appellant.

Civ. Nos. 10032, 10046.

Supreme Court of North Dakota.

April 1, 1982.

Leland F. Hagen, of Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for plaintiff and appellant in No. 10032.

Alph J. Overby, Cooperstown, and Kenneth L. Dalsted, of Gilje, Greenwood & Dalsted, Jamestown, for Anneus Meester; argued by Dalsted.

Nancy S. Fay, of Fay & Griffeth, West Fargo, for defendant and appellant in No. 10046.

VANDE WALLE, Justice.

In January of 1980, Anneus Meester filed suit against Esther Hanson seeking specific performance of an earnest-money agreement to convey 300 acres of Griggs County farmland. In January of 1981, E. E. E., Inc., sued Hanson and Meester[1] seeking

---

1. Several other defendants, judgment creditors, were also sued. They did not participate in the trial or the appeal. Hanson did not file an appellate brief in the foreclosure action.

foreclosure of a mortgage executed by Hanson upon the same farmland. The actions were joined by order of the court. The court ordered specific performance of the earnest-money agreement in favor of Meester, and Hanson appealed. We reverse. A judgment in favor of Hanson and Meester decreeing the mortgage invalid and dismissing the foreclosure action was entered. E. E. E., Inc., appealed. We reverse. To minimize the confusion, we will discuss the cases separately.

## I. MEESTER v. HANSON

Shortly after acquiring the farmland through an estate settlement, Hanson listed it for sale with a real estate broker, Gladys Johnson. The earnest-money agreement between Hanson and Meester was prepared by Johnson. The pertinent provisions of the agreement are as follows:

---

### EARNEST MONEY RECEIPT AND AGREEMENT

RECEIVED FROM *Umneus, Meester and Marjorie Meester* City *Fargo* State *N. Dakota August 1*, 19 *79*
the sum of $ *1,000* in the form of *Check*, as earnest money and in part payment for the purchase of the following described
real estate situated in the City of *County of Griggs* County of *La Nord Tungi* State of *North Dak* to wit:

*legal Description: N.E. ¼ less 25-148-58*
*S.E. ¼ less 25-148-58*
*1.35½A of S.E. ¼ 25-148-58*
*Sale to be 360 or 320 acres listed above —*

to the purchaser subject to owner's acceptance for the sum of *One hundred fifty three* Dollars $ *150,000*
on the following terms, to wit: The earnest money hereinabove receipted for . . . . . . $ *1,000*;
on *8/10*, 19 *79* on owner's acceptance, as additional earnest money, the sum of . . $ *10,000*;
upon delivery (1) of the evidence of title mentioned below and (2) of a deed, . . . the sum of . . $ ——;
Balance of *final payment on closing date 9/10/79 out* Dollars $ *139,000*
payable as follows *Time is of essence*

---

All parties agree that the first earnest-money payment of $1,000 was timely made. The controversy on appeal centers on the fact that the second earnest-money payment of $10,000 was not made until August 31, 1979.[2] In granting Meester specific performance, the trial court, in effect, determined that payment on August 31 was acceptable, despite the contractual language denominating August 10 as the date on which payment was due and specifying that "Time is of essence." The trial court made these relevant findings of fact:

"3. The contract refers to acts to be completed on August 10, 1979, and September 10, 1979, and the Court finds that

under the same or similar circumstances 30 days has been held to be an acceptable time for a party to act.

· · · · ·

"5. That the plaintiff, purchaser, complied with the terms of the contract in making payments of $1,000.00 and $10,000.00 within the time required to the seller, or her agents, or as directed by the agents of the seller."

What are the legal consequences of Meester's failure to tender the $10,000 earnest-money payment on the exact day specified in the contract?

2. Meester, acting on the directions of Broker Johnson, delivered the $10,000 check to his attorney on August 31, 1979. No tender of this check was ever made to Hanson but Broker Johnson testified that Meester's attorney informed Hanson of the delivery of the check. Hanson has raised a question concerning the

validity of the tender to Meester's attorney, including the hearsay problem inherent in Broker Johnson's testimony. In view of our holding that the failure to perform on the exact date specified defeats the enforcement of specific performance, it is unnecessary to consider this contention.

According to the authorities, the question of whether or not a contract must be performed at the exact time specified therein is usually expressed in the inquiry as to whether or not time is of the essence of the contract. 17 Am.Jur.2d, *Contracts*, § 332. Under Section 9–07–23, N.D.C.C., time is of the essence of a contract if it is provided expressly by the terms of the contract or if it was the intention of the parties as disclosed thereby. See *Burwick v. Saetz*, 154 N.W.2d 679, 683 (N.D.1967). The effect of a "time is of the essence" stipulation was discussed long ago in *Fargusson v. Talcott*, 7 N.D. 183, 73 N.W. 207, 208 (1897):

> "[T]he parties may by their agreement make time of the essence thereof; . . . in such a case failure to comply with the terms of the contract, at the time named therein for performance, will debar the person in default from claiming any rights thereunder, even in a court of equity."

And see *Horgan v. Russell*, 24 N.D. 490, 140 N.W. 99, 104 (1913); *Sunshine Cloak & Suit Co. v. Roquette Bros.*, 30 N.D. 143, 152 N.W. 359 (1915). Although Hanson and Meester, by both handwritten and printed specifications, made "time of the essence" of their agreement, Meester did not tender payment of the $10,000 earnest money until 21 days after the specified date. Under these circumstances, we hold that Meester's failure to perform on the precise day specified in the agreement should have precluded the granting of specific performance.

The trial court's reason for ordering specific performance, in spite of Meester's delay, was its finding that a 30-day period "has been held to be an acceptable time for a party to act." In assailing this finding, Hanson has urged us to review it

as a "conclusion of law" rather than determining if the finding is "clearly erroneous" under Rule 52(a), N.D.R.Civ.P.[3] We agree with Hanson's characterization. Findings of fact are the realities as disclosed by the evidence as distinguished from their legal effect or consequences. Where the ultimate conclusion can be arrived at only by applying rules of law the result is a "conclusion of law." *Slope Cty., Etc. v. Consolidation Coal Co.*, 277 N.W.2d 124, 127 (N.D. 1979). And see *Kasper v. Provident Life Ins. Co.*, 285 N.W.2d 548 (N.D.1979). In this case, no evidence was introduced which suggested that performance within a 30-day period was considered by the parties. It appears that the trial court, sua sponte, determined the legal effect of the delay in performance, i.e., the trial court concluded that the law granted Meester a 30-day grace period.

This determination, by whatever label it wears, directly contradicts the well-established legal meaning of the "time is of the essence" clause.

Normally, parties to a contract are allowed to write the terms of the contract themselves. *State Farm Fire, Etc. v. St. Paul Fire, Etc.*, 268 N.W.2d 147 (S.D.1978). A court may be called upon to interpret a contract written by the parties thereto but the court's authority to interpret a contract does not give a court the authority to modify it. *Johnson v. Johnson*, 291 N.W.2d 776 (S.D.1980). Here, the parties took special pains to assure that the contract reflected their intent that time was of the essence. In addition to the printed provision specifying that time was of the essence, the parties inserted a handwritten statement to that effect. There can be no doubt of their intent and we cannot ignore it under the

---

**3.** The distinction between a "finding of fact" and a "conclusion of law," and the applicable standard of review, is well established. Rule 52(a), N.D.R.Civ.P., prohibits us from setting aside a trial court's findings of fact unless they are clearly erroneous. A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Matter of Estate of Mehus*, 278 N.W.2d 625,

633 (N.D.1979). Conclusions of law, on the other hand, are fully reviewable; they are not fortified by the clearly erroneous rule applicable on appeal to findings of fact. *Western Tire, Inc. v. Skrede*, 307 N.W.2d 558, 561 (N.D.1981). Whether a particular finding is a finding of fact or is a conclusion of law will be determined by the reviewing court, and labels placed upon the findings by the trial court are not conclusive. *Snortland v. Crawford*, 306 N.W.2d 614 (N.D. 1981).

guise of interpreting the contract. In *Fargusson v. Talcott, supra,* the court discussed the policy reasons which support the strict enforcement of provisions making time of the essence of the agreement:

> "The owner of the land, having other business interests, may foresee that he will need or can use to great advantage the money at a particular time, and that if he can have the money on the very day named he can afford to sell on the terms specified. But he may be unwilling to sell on such terms if the payment is to be deferred. The profit to him may not be in the sale of the land, but in the use to which he can put the money, provided he can have it on the very day on which the vendee agrees to pay it." 73 N.W. at 208.

These reasons are as sound today as they were when first propounded in 1897. Hanson was entitled to rely on the terms of the contract.

■ Meester, in opposing this conclusion, points to the legal principle which excuses delay in performance if the delay is caused by the other party. See *McWithy v. Heart River School Dist. No. 22,* 75 N.D. 744, 32 N.W.2d 886 (1948). Relying on the written terms of the contract, Meester argues that the earnest-money contract requires additional earnest money of $10,000 to be paid on delivery (1) of evidence of title and (2) of deed. He says that the delivery of the abstract by the seller was a condition precedent to his obligation to tender the $10,000 earnest money. Meester cites the trial court's finding that "the seller ... failed to provide [the abstract]" and contends that his delay in performance is excused.[4]

We do not agree. A condition precedent is a condition which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed. Sec. 9-01-11, N.D.C.C.; *Evenson v. Hlebechuk,* 305 N.W.2d 13, 17 (N.D.1981). Whether the doing of an act is a condition precedent depends on the intention of the parties as deduced from the whole instrument. 17 Am.Jur.2d, *Contracts,* § 321. We have concluded that the delivery of the abstract is not, *under the terms of this earnest-money agreement,* a condition precedent to the payment of the $10,000 earnest money. By the terms of the contract, the purchaser's duty *to pay the balance* is conditioned "upon delivery (1) of the evidence of title ... and (2) of [a] deed." In contrast, the purchaser's duty to pay the $1,000 and $10,000 *earnest-money installments* is made unconditional and independent. The printed form of the contract envisions payment in four steps, with delivery of the abstract required after three earnest-money installments have been paid. The parties deleted the third installment requirement in completing the form but nevertheless required the second installment to be paid before delivery of the abstract to Meester. As one learned author explained, in an installment contract such as this, "one of the parties is giving 'credit' to the other, and the transaction is in part a 'credit transaction.'" 3A Corbin on Contracts, § 664. Here, the purchaser, Meester, gave credit to the seller, his promise to pay the first two installments being independent of any performance by the seller. Compare *Kennedy v. Dennstadt,* 31 N.D. 422, 154 N.W. 271 (1915) [agreement clearly provided that purchaser was to receive an abstract before second installment was due].

Meester's failure to pay the second installment on time, when time is of the essence of the contract, discharged Hanson from further duties under the contract. The judgment ordering specific perform-

4. An abstract was delivered to the office of Meester's attorney on August 31, 1979. A third party delivered it. Hanson retrieved the abstract on September 17, 1979. The trial court, despite this evidence, found that "the seller ... failed to provide [the] abstract." In its oral order, the court found that Hanson made a good-faith effort to furnish an abstract.

The court, however, considered the delivery flawed because it was not delivered with "instructions to [Meester's counsel] as to what the purpose of the deposit was." Because of our holding, we do not find it necessary to consider whether delivery of the abstract under these circumstances was legally adequate.

ance of the earnest-money agreement is reversed.

## II. E. E. E., INC. v. HANSON

In late 1978, Hanson entered into an agreement with E. E. E., Inc., for the construction of a laundromat in Aneta, North Dakota. Ole Erickson, the president and principal owner of E. E. E., Inc., negotiated with Hanson. As a downpayment, Hanson tendered Erickson a check for $5,000. The check was dishonored. On Hanson's assurances "that the check was going to be good" and that she was going to obtain a loan, the "structural work" on the laundromat was completed. From February through December 1979, work ceased while the parties waited "to see what happened with the loan." In December of 1979, Hanson signed a promissory note for the total amount of $66,233.[5] By March 1980, the laundromat was completed. On February 4, 1980, Hanson executed two mortgages designating E. E. E., Inc., as the mortgagee. One mortgage covered the laundromat; the other mortgage—the one at issue in this appeal—pledged the Griggs County farmland discussed above. The mortgages were assigned to the Page State Bank. After a title opinion revealed that the farmland had been mortgaged previously to the Hanson heirs for $83,200,[6] the bank declined to make the loan. The mortgages were reassigned to E. E. E., Inc. Erickson testified that the mortgages were executed in order to obtain a loan for Hanson, not to secure the promissory note. Hanson testified that she originally intended to mortgage only the laundromat but that the banker required the additional mortgage on the farmland.

 The trial judge declared the mortgage on the farmland a nullity for several reasons. He deemed the mortgage invalid because the note did not contain an "unconditional promise," as defined in Sections 41–03–04 and 41–03–05, N.D.C.C. The import of this ruling, that a note secured by a mortgage must be a negotiable instrument, is legally incorrect. Generally, any obligation capable of being reduced to a money value may be secured by a mortgage. Osborne, *Law of Mortgages*, § 105. Although the obligation secured by the mortgage must be valid and supported by consideration, there is no requirement that it meet the exacting standards of negotiability imposed under Article III of the Uniform Commercial Code.

 The mortgage identifies the debt it secures as a "note of February 4, 1980." No note executed on that date was introduced into evidence and the trial court relied on the "lack of [a] subsisting note dated the 4th day of February, 1980," as an additional reason for invalidating the mortgage. E.E.E., in opposing this conclusion, relies on the general rule that errors or inaccuracies in the description of the note secured by the mortgage will not invalidate the mortgage if the intention of the parties is apparent, or the note can be otherwise identified. 59 C.J.S. *Mortgages* § 112d. There is no question that the note covered by the mortgage is the $66,233 note signed by Hanson on December 23, 1979; no one has disputed this fact. Under the circumstances of this case, where no innocent third parties are involved, the misdescription of the underlying note is not fatal to the mortgage. Cf. *Security Building & Loan Assn. v. Costello*, 66 N.D. 179, 263 N.W. 712 (1935) [mortgage, even though it contained no sufficient description of the mortgaged premis-

---

**5.** The note was prepared by Erickson:

"To whom it may concern

"Promissary note to E.E.E. Inc.

"I Esther Hanson promise to pay E.E.E. Inc a sum of $60,000.00 (dollars) by January 15, 1980 or shortly there after, not to exceed January 31, 1980 for work done on a laundry mat at Aneta, North Dakota. The balance to be paid within 30 days after completion of all work, also to pay $5500.00 (dollars) that Ole advanced you to help you get your loans and

the $733.00 (dollars) that paid the realestate taxes on laumdromat.

"I Esther Hanson personally guarantee this statement.

"Signed ESTHER HANSON
"Dated December 23, 1979."

**6.** This mortgage was dated June 19, 1979, and was executed as part of the settlement of Hanson's husband's estate. This mortgage was assigned subsequently to Erickson.

es, was effective against plaintiff, a subsequent mortgagee who took with knowledge of all the facts in connection with the matter].

■■■■■ Failure of consideration for the mortgage is another ground advanced by the trial court to invalidate the mortgage. The court found that the mortgage was executed in "conjunction with attempts by the parties to obtain bank financing for the laundromat ... and was not intended as a direct execution of further security, enforceable by foreclosure, to [E. E. E., Inc.] for payment of the [$66,233] debt."[7] Because the bank refused Hanson's request for a loan, the court concluded that the intended consideration for the mortgage failed. Assuming, arguendo, that the trial court properly admitted parol evidence to establish the failure of consideration [see *Verry v. Murphy*, 163 N.W.2d 721 (N.D. 1968); *Grebe v. Swords*, 28 N.D. 330, 149 N.W. 126 (1914)], we have determined that the decision nullifying the mortgage was erroneous. Generally, if there are several considerations and some fail, if the others are good and sufficient the good will sustain the promise. See *Butterfield v. Reynolds*, 196 Mich. 157, 163 N.W. 86 (1917). It has long been established that a pre-existing debt may be consideration for a mortgage. *Sargent v. Cooley*, 12 N.D. 1, 94 N.W. 576 (1902).

While the primary consideration for the mortgage may have been the procurement of a loan, it is undisputed that Hanson owed E. E. E., Inc., $66,233 and executed the mortgage for the ultimate purpose of *repaying her debt to E. E. E., Inc.* Under these circumstances, we have no hesitation in applying the general rule that a pre-existing debt may be consideration for a mortgage [*Sargent, supra*] and sustaining the mortgage on this ground.[8]

*Turtle Mountain Supply Co. v. Krieg*, 72 N.D. 338, 7 N.W.2d 432 (1943), relied on by Meester, does not require a different result. *Krieg* held that the trial court's findings, that the promissory note and real estate mortgage were delivered conditionally, and never became effective or binding obligations of the makers, were in accord with the weight of the evidence. The question of evidentiary support for the trial court's findings was the only legal issue addressed by the court.[9] For this reason we do not find *Turtle Mountain* persuasive.

The judgment decreeing the mortgage invalid and dismissing the foreclosure action is reversed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

**7.** This factual finding was included in the court's conclusions of law. As noted in fn. 3, however, the reviewing court decides whether a particular determination is a finding of fact or a conclusion of law.

**8.** As an additional ground of error, Meester contends on appeal that the mortgage is illegal. He bases his claim on the Short-term Mortgage Redemption Act, Ch. 32–19.1, N.D.C.C. Mortgages may be foreclosed under this chapter only on property involving an area not to exceed ten acres. Sec. 32–19.1, N.D.C.C. The mortgage in this case was executed on a standard "short-term mortgage redemption" form even though the mortgage covered property in excess of ten acres. The effect of this is not to nullify the mortgage, however. Instead, the time of redemption is governed by Ch. 28–24, N.D.C.C.

**9.** We note that the *Krieg* court did not consider the contrary case of *Cooley, supra*, 94 N.W. 576, which holds that a mortgage cannot be delivered conditionally.