**MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MINOT,** Plaintiff and Appellee,

v.

**Albert W. KOUBA a/k/a Albert Kouba a/k/a Rusty Kouba and Sharon R. Kouba, his wife, Defendants and Appellants,**

**W.S. Raymond; State of North Dakota; L.E. Coppersmith, Inc.; Town and Country Credit Union; Citizens State Bank of Ray; The United States of America, and all persons unknown claiming any estate or interest in, lien or encumbrance upon the property described in the Complaint, Defendants.**

Civ. No. 10369.

Supreme Court of North Dakota.

June 24, 1983.

---

Collin P. Dobrovolny, of Anderson & Dobrovolny, Minot, for plaintiff and appellee.

Albert W. Kouba, pro se.

PAULSON, Justice.

This is an appeal by Albert W. Kouba and Sharon Kouba from an order and a judgment which granted a motion for summary judgment made by Midwest Federal Savings and Loan Association of Minot. We affirm.

In 1975 the Koubas executed a note and a mortgage wherein they agreed to pay Midwest Federal $31,400 in monthly installments and eight and one-half percent interest on the unpaid balance for two lots in Minot and the house that was built upon the lots. In January, February, and March of 1982 the Koubas did not pay the monthly installments of $302 each.

On March 5, 1982, Albert Kouba presented Midwest Federal with a two-party check for $5,000. Kouba wanted to pay $906 for the three-month delinquency and he wanted the balance in cash. After Midwest Federal called the bank on which the $5,000 check was drawn, Midwest refused to honor the check. The South Dakota bank told Midwest Federal that although there were sufficient funds in the account to cover the check at that time, the bank would not guarantee payment by the time the check cleared. Kouba stated that he then took the $5,000 check to a Minot bank and cashed it; however, he did not return to Midwest Federal to pay the delinquent amount due.

On March 30, 1982, Albert Kouba gave Midwest Federal $302 cash for the April payment. The money was accepted by a teller, but Midwest immediately mailed Kouba a check for the $302 because of its policy not to accept partial payment for a loan which is delinquent more than one month.

Midwest Federal informed the Koubas of its intent to foreclose in April 1982, and began this action in June 1982. The Koubas requested a jury trial, and the trial judge sent the parties a document entitled "Order Setting Date of Jury Trial and Pre-Trial Conference". In October 1982 Midwest Federal moved for an order striking the Koubas' demand for trial by jury, an order striking several portions of the Koubas' answer and counterclaim, and an order for summary judgment pursuant to Rule 56 of the North Dakota Rules of Civil Procedure.

During a pretrial conference on November 18, 1982, the trial judge determined that the district court had jurisdiction over Midwest Federal; that federal reserve notes are legal tender; and that Midwest Federal gave the Koubas consideration for the promissory note. The trial judge concluded in a written opinion:

"All of the relevant defenses invoked by the defendants are questions of law. [The issues involved] ... can be determined by the Court because they are questions of law and not of fact.

"The Court DENIES the defendants request for a jury trial ...."

The trial judge recused himself from the action on November 30, 1982, and a different judge was assigned for the hearing on

December 22, 1982. The second judge allowed the note and mortgage to be received as evidence over Albert Kouba's objection. The judge also denied the Koubas' demand for a pretrial evidentiary hearing and granted Midwest Federal's motion to strike portions of the Koubas' answer and counterclaim. In his order for judgment, the judge set forth several conclusions of law, including: (1) the court has jurisdiction over the parties; (2) there are no genuine issues of material fact in the action; (3) Midwest Federal is entitled to summary judgment as a matter of law; and (4) the Koubas' mortgage is to be foreclosed. The Koubas appealed.

■ The first issue on appeal is whether or not the district court had jurisdiction over Midwest Federal Savings and Loan during this action. Midwest Federal is a federally chartered savings and loan association regulated by the Federal Home Loan Bank Board. *See Glendale Fed. Sav. & Loan Ass'n v. Fox,* 459 F.Supp. 903 (D.C. Cal.1978). *See generally* 12 U.S.C. §§ 1461 to 1470. The Koubas argue that Midwest Federal is not a North Dakota citizen and, as a result, North Dakota courts lack jurisdiction over Midwest Federal. The Koubas are the defendants in this action and, as such, they may challenge the court's jurisdiction of themselves and of the subject matter. However, the Koubas may not challenge the court's jurisdiction over Midwest Federal, the party bringing this action.

■ Our next consideration is whether or not the trial judge erred by denying the Koubas' request for a jury trial after informing them of the date of their trial with the issuance of a document entitled "Order Setting Date of Jury Trial and Pre-Trial Conference". When a court determines if a party is entitled to a jury trial, the distinction between an action at law and an action in equity is important. *Northwestern Bell Tel. Co. v. Cowger,* 303 N.W.2d 791, 794 (N.D.1981); *Ziebarth v. Kalenze,* 238 N.W.2d 261, 267 (N.D.1976). In an equitable action, there is no absolute right to a jury trial. *See In re R.Y.,* 189 N.W.2d 644,

651 (N.D.1971). This court previously stated that the foreclosure of a lien is an equitable action, triable to the court without a jury. *C.I.T. Corporation v. Hetland,* 143 N.W.2d 94, 101 (N.D.1966). *Accord Superior Products v. Merucci Bros., Inc.,* 107 Mich. App. 153, 309 N.W.2d 188, 191 (1981). Similarly, the foreclosure of a mortgage is an equitable proceeding. *See Lincoln Joint Stock Land Bank v. Barnes,* 143 Neb. 58, 8 N.W.2d 545, 549–550 (1943). Therefore, the Koubas do not have a right to trial by jury in this action.

■ However, we must also consider the effect of the order sent to the Koubas. The trial judge mistakenly used a form containing the words "order setting date of jury trial", which led the Koubas to believe he was granting their request for a jury trial, when, in fact, he was notifying them only of the dates for the pretrial conference and of the trial. Rule 61 of the North Dakota Rules of Civil Procedure requires that courts ignore procedural errors unless they have affected substantial rights of the parties. *See* 11 Wright & Miller, Federal Practice and Procedure: Civil § 2881, at 273. Rule 61, N.D.R.Civ.P., provides in relevant part that:

"... no error or defect in any ruling or order or in anything done or omitted by the court ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court, at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

We do not believe that the Koubas' substantial rights were affected by the judge's action because the Koubas did not have a right to trial by jury in this mortgage foreclosure action. The trial court properly denied the Koubas' request for a jury trial.

The third issue is whether or not the trial judge correctly granted Midwest Federal's motion for summary judgment. Motions

for summary judgment are often brought in actions involving debts. *See Farmers & Merchants National Bank v. Lee,* 333 N.W.2d 792, 793 (N.D.1983); *Titus v. Titus,* 154 N.W.2d 391, 396 (N.D.1967).

■ Summary judgment is proper when there is no genuine issue as to any material fact. Rule 56(c), N.D.R.Civ.P. Because Midwest Federal made the motion for summary judgment and supported it with documents and affidavits in the record, it is the Koubas' responsibility to "set forth specific facts showing that there is a genuine issue for trial". Rule 56(c), N.D.R. Civ.P. *See Herman v. Magnuson,* 277 N.W.2d 445, 454–455 (N.D.1979). The record contains both the note and the mortgage which pledged the real property as security; both were approved by the Koubas and Midwest Federal. Documents in the record show that the Koubas did not pay their mortgage payments for the first three months in 1982.

■ After reviewing the entire record in this action, we conclude, as the trial judge did, that there are no genuine issues of material fact. All of the issues raised by the Koubas are questions of law and, as such, they are fully reviewable by this court. *See E.E.E., Inc. v. Hanson,* 318 N.W.2d 101, 104 n. 3 (N.D.1982). We note that in an action such as this with no disputed material facts, a bench trial does not deprive a person of any right to a jury trial that he has. *See* 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2714, pp. 624–625.

Although the Koubas' brief is confusing, it appears that their major concern involves payments offered to Midwest Federal. It is the Koubas' position that they twice offered payment, that both times the payments were wrongfully refused, and that, as a result, they are not in default.

On March 5, 1982, Midwest Federal refused Albert Kouba's offer of a two-party check that was made payable to "Spoken Word", was drawn on a South Dakota bank, and was for over $4,000 more than the balance then due. Before refusing to cash the check, Midwest Federal called the South Dakota bank and was told that payment would not be guaranteed.

Midwest Federal relies upon two sections of the Uniform Commercial Code [U.C.C.] to defend its refusal to accept the check offered by Mr. Kouba. U.C.C. § 3–107(1). [codified as § 41–03–07(1), N.D.C.C.] provides that negotiable instruments are payable in "money". "Money", for the purposes of the Uniform Commercial Code, is defined in U.C.C. § 1–201(24) [codified as § 41–01–11(24), N.D.C.C.] as "a medium of exchange authorized or adopted by a domestic or foreign government as a part of its currency". A check is not included in this definition of money. *See* 1 Anderson, Uniform Commercial Code § 1–201:363 (3d ed. 1981).

■ A recent annotation analyzing the practice of judgment creditors requiring judgment debtors to tender payment in cash instead of an uncertified check states that courts usually analyze this fact situation by applying general principles governing payment of debts. *See* Annot., 82 A.L. R.3d 1199, 1201 (1978). The author of the annotation states the following reason for allowing a creditor to refuse tender of a check for debts owing and to require "money":

> "Although checks have gained wide acceptance in modern commercial practice as a form of payment of obligations, the fact [is] that such instruments are not clothed with the status of legal tender, and . . . that the check collection process often involves some degree of delay and uncertainty . . . ."

Because the Koubas offered a two-party check for $5,000, that was not guaranteed by the bank upon which it was drawn, in order to pay a $906 debt, we agree with the trial court that Midwest Federal had the right to refuse the check and require payment from the Koubas in money in the amount of the delinquency.

■ Albert Kouba also offered Midwest Federal $302 in cash for the April 1982 installment payment. Although initially accepted by a teller at the bank, the $302

was returned to the Koubas because the sum offered was only part of the total amount due. Generally, an offer of part of an amount due is insufficient tender that a creditor may accept or reject. *See* 74 Am. Jur.2d *Tender* § 22.

Both the note and the mortgage executed by the Koubas clearly state that upon any default in the payment of an installment, the entire principal sum and accrued interest becomes due without notice at the option of Midwest Federal. We agree with the trial court that Midwest Federal had the right to refuse the partial payment offered by the Koubas. Neither the offer of the two-party check nor the offer of the partial payment in money had any legal effect upon these foreclosure proceedings.

The Koubas' brief also raises several other legal questions, all of which are without merit. For example, the Koubas argue that they were not loaned "lawful money", which they contend consists of gold or silver coin. *See generally City of Colton v. Corbly,* 323 N.W.2d 138, 139 (S.D.1982) (federal reserve notes are legal tender for the purpose of paying debts). It is true that the Koubas were not loaned gold or silver. Instead, Midwest Federal gave them credit to purchase land and a house. The note and mortgage executed by the Koubas clearly indicate the Koubas' agreement to pay dollars for the value they received. What the Koubas personally believe "lawful money" consists of is not relevant to this action.

The similar argument made by the Koubas that a contract does not exist because there was no consideration is incorrect. The written note and mortgage alone, executed by the Koubas, are presumptive evidence of consideration. The Koubas did not rebut this presumption. *See* § 9–05–10, N.D.C.C.; *Farmers and Merchants National Bank v. Lee,* 333 N.W.2d 792, 794 (N.D.1983).

Finally, the Koubas' argument that the note and mortgage should not have been admitted into evidence without au-

thentication by witness testimony is unfounded. The trial judge correctly applied Rules 902(8) and 902(9), North Dakota Rules of Evidence, which state respectively that acknowledged documents and commercial paper do not require extrinsic evidence of authenticity before admission.

For the reasons stated in this opinion, the judgment granting Midwest Federal's motion for summary judgment in this mortgage foreclosure action is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.