Rodney BRUDVIG, Plaintiff, Appellant and Cross-Appellee,

v.

Anneus MEESTER, Defendant, Third Party Plaintiff and Appellee,

v.

Esther HANSON, Third Party Defendant, Appellee and Cross-Appellant.

Civ. No. 10587.

Supreme Court of North Dakota.

Oct. 30, 1984.

Leland F. Hagen, Fargo, for plaintiff, appellant and cross-appellee.

Johnson, Johnson, Stokes, Sandberg & Kragness, Wahpeton, for defendant, third party plaintiff and appellee; argued by A.W. Stokes, Wahpeton.

Kathryn Page, Grand Forks, for third party defendant, appellee and cross-appellant.

GIERKE, Justice.

Rodney Brudvig and Esther Hanson have appealed from a district court judgment entered upon a jury verdict distributing crop proceeds. We affirm in part, reverse in part, and remand.

On August 7, 1979, Hanson and Meester entered into an earnest money agreement by which Hanson agreed to convey to Meester 300 acres of farmland. After a dispute arose between them, Meester filed suit against Hanson in January of 1980 for specific performance of the agreement. While that suit was pending, the land was farmed in 1980 by a person not involved in this case.

By agreement dated October 10, 1980, Hanson leased the land to Brudvig for one year. Under the terms of the lease, Hanson was to receive one-third of all crop production and government payments and Brudvig was to receive the remaining two-thirds. Brudvig fall-plowed the stubble

ground in mid-October, 1980, at which time there were 142 acres of sunflowers not yet harvested. Neither this lease agreement nor the above referenced earnest money agreement was recorded.

The specific performance action was tried on November 14, 1980. The trial court issued findings of fact, conclusions of law, and order for judgment granting specific performance on November 18, 1980. Entry of judgment, however, was delayed pending the outcome of a foreclosure action involving the same land filed by E.E.E., Inc. Meester's attorney filed a notice of *lis pendens* with the Griggs County Register of Deeds on November 20, 1980. Judgment was entered on June 3, 1981.

In the spring of 1981, Brudvig disced the sunflower ground and applied anhydrous ammonia to it and the other land he intended to plant that year.

On April 23, 1981, Meester informed Brudvig that possession of the property was being litigated and there was going to be a hearing in court the next day. Brudvig contacted the attorneys for Meester and Hanson that evening. The attorneys gave Brudvig opposite opinions of the probable results of the hearing scheduled for the next day. Brudvig, who was not a party in either of the pending actions, was not represented by counsel, and had not been served with process of any kind, attended the April 24, 1981, hearing, in the foreclosure action brought by E.E.E., Inc. At that hearing, the trial court noted:

"THE COURT: That still leaves us with the question of the claim of a right of a tenant in possession. That is, Mr. Brudvig, I believe his name was, and he doesn't appear in the action by counsel or by document in any way."

The following exchange took place between the trial court and Brudvig:

"THE COURT: It's the 24th of April and the crop needs to be put in. Mr. Brudvig, are you willing to put your, plead your case before the Court at this time without any other preparation?

"MR. BRUDVIG: No, yesterday was the first that I knew of any of this court proceedings. Mr. Meester stopped by and I was working out in the field and he stopped by and informed me that there was court this morning and that was the first I knew of anything. There are rumors once in a while that the land will be sold and so forth, but there wasn't anything that I knew of."

The trial court subsequently orally ordered as follows:

"There is nothing before the Court to prevent the carrying forward of the judgment of requiring specific performance and because of the exigencies of the season the Court is of the opinion that some decision has to be made rather than to await the decision of whether or not actually to appeal within 60 days after the entry of the decree to be entered hereon and, therefore, it would be the judgment of the Court that possession of the farm land should be surrendered to Mr. Meester in accordance with the prior judgment of the Court ....

\*     \*     \*     \*     \*     \*

"THE COURT: The purpose of the Court's action is to secure possession effective today in Mr. Meester and this is a court of record. The order of the court subsists from the time it is stated in open court and the entry of a document called the order of the court. It commensurates the deed that takes place in open court so in the Court's understanding Mr. Meester is entitled to the possession of the property from and after this moment. And all the other rights of other parties as previously stated. Subject to the right of appeal by Mrs. Hanson."

Brudvig thereafter seeded 81 acres of durum on the land before giving up possession after Meester told him "you know the Court had give me possession." Meester then seeded the rest of the crop.

Brudvig filed suit in May 1981 for an injunction and damages. Brudvig and Hanson later sought to recover damages for waste they alleged that Meester committed on the premises. Meester remained in possession of the land. After the crop

was harvested, Hanson was paid one-third of the proceeds and the remainder was placed in a bank account pending trial.

Judgment granting Meester specific performance of the earnest money agreement was entered on June 3, 1981. That judgment, as well as the judgment decreeing invalid the mortgage held by E.E.E., Inc., was appealed to this Court. On April 1, 1982, we issued our opinion in *E.E.E., Inc. v. Hanson*, 318 N.W.2d 101 (N.D.1982), in which we reversed both judgments.

The instant action was tried to a jury in October 1983. The jury determined that Meester should recover expenses of $13,806.81 from the crop proceeds and that Brudvig should recover expenses of $538.52 from the crop proceeds. The jury also determined that Meester did not commit waste upon the premises. Judgment was entered in accordance with the verdict and Hanson and Brudvig appealed.

■ On the matter of Meester's and Brudvig's interests in the two-thirds of the crop proceeds not paid to Hanson, the trial court instructed the jury:

"Meester is entitled to receive the reasonable value of the farming and labor expenses he put into the land since he was farming the land in reliance on a court order at the time he farmed the land.

"It is up to you to decide on amount he should be reimbursed.

"Since plaintiff Brudvig farmed the land under a valid lease agreement with Esther Hanson, he is entitled to two-thirds of the proceeds of the land, which would include his expenses, less any reasonable expenses defendant and third party plaintiff Meester incurred in farming the land.

"Since Brudvig was later determined to have been entitled to possession, he is entitled to two-thirds of the present crop proceeds, including his expenses, less the reasonable expenses of Meester.

"Here again, it is up to you to decide the amount Brudvig should receive for his two-thirds share, including his reasonable expenses, less Meester's reasonable expenses.

"Two-thirds of the present crop proceeds is approximately $14,345.33 ($13,575.33 in the bank and $770 held by ASCS)."

Meester and Brudvig agree that, through the foregoing instruction, the trial court directed the jury to return a verdict awarding Meester all the expenses he had incurred in farming the land. As far as is pertinent to this matter, the special verdict form submitted to the jury was returned as follows:

"1) What are the reasonable expenses expended by Anneus Meester in farming the land? Amount: $13,806.81

"2) What are the reasonable expenses of Rodney Brudvig in farming the land before April 24, 1982? Amount: $4224.60

"3) What are the reasonable expenses of Rodney Brudvig in farming the land after April 24, 1982? Amount: $1016.69

"4) What amount is the defendant Anneus Meester entitled to receive from the crop proceeds to reimburse him for expenses? Amount: $13,806.81

"5) What amount, including his expenses, is the plaintiff Rodney Brudvig entitled to receive from the crop proceeds? Amount: $538.52"

In farming the land when they did, both Meester and Brudvig did so in reliance upon matters on which they were reasonably and justifiably entitled to rely. Brudvig farmed the land in reliance upon a valid lease from Hanson, who owned the land. Meester farmed the land in reliance upon the authorization [1] by a judge of the dis-

---

**1.** There was some question at oral argument as to what "court order" the trial court's instructions referred. We deem it of little moment whether the trial court in this case was referring to his written order of June 24, 1981, denying Brudvig's motion for a temporary injunction and ordering that Meester retain possession of the land, or the verbal "order" of the judge presiding at the April 24, 1981, hearing in the foreclosure action. Both were based upon the November 18, 1980, determination that Meester was entitled to specific performance, which was

trict court to do so, although the determination that Meester was entitled to specific performance of the earnest money agreement (upon which the authorization was based) was later reversed in *E.E.E., Inc. v. Hanson*, supra.

In our view, a directed verdict in favor of Meester was improper. To the extent that the judgment was based upon an improperly directed verdict, it is reversed. In directing a verdict in favor of Meester, the trial court in its instruction improperly relegated the valid lease upon which Brudvig relied to a status inferior to that of the court order relied upon by Meester.

In light of the foregoing, it appears to us that the most fair and equitable resolution of the controversy over the amount of expenses to be recovered by Meester and Brudvig is to award each his proportionate share of the expenses incurred. By its special verdict, the jury found that Meester incurred reasonable expenses in the amount of $13,806.81 and that Brudvig incurred reasonable expenses in the amount of $5,241.29. The reasonable expenses expended by Meester and Brudvig totalled $19,048.10. The expenses incurred by Meester constituted 72.48 percent of the total expenses incurred and the expenses incurred by Brudvig constituted 27.52 percent of the total. As the trial court instructed the jury, there were crop proceeds of only approximately $14,345.33 to be distributed.

In an attempt to obviate the necessity of a new trial on this matter, we remand with instructions that, unless Meester within ten days after remand agrees to a reduction of the crop proceeds paid him to 72.48 percent of the crop proceeds available for distribution ($10,397.50) and an increase of the crop proceeds paid to Brudvig to 27.52 percent of the crop proceeds available for distribution ($3,947.83), Brudvig be granted a new trial without an instruction directing a verdict in favor of Meester. Absent a new trial, any interest accumulated should be shared in the same proportions.

Brudvig has asserted that the trial court erred in holding as a matter of law that Meester was not a trespasser in bad faith. Under all of the circumstances involved, we are unable to conclude that the court erred.

Hanson has asserted that the jury's finding that Meester did not commit waste upon the premises is clearly erroneous under Rule 52(a), N.D.R.Civ.P. Rule 52(a) is not applicable to the jury verdict here involved. Upon viewing the evidence in the light most favorable to the verdict (*Matter of Estate of Knudsen*, 342 N.W.2d 387 (N.D.1984)), we conclude that there is substantial evidence to support it. This determination renders unnecessary a determination of whether or not a stipulation entered into by Meester and Hanson released Meester from liability for waste.

For the reasons stated, the judgment is affirmed insofar as it awards no damages for waste, reversed as to crop proceeds paid to Meester and Brudvig to the extent that the judgment was based upon an improperly directed verdict, and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and SAND, VANDE WALLE and PEDERSON, JJ., concur.

---

later reversed by this Court in *E.E.E., Inc. v. Hanson, supra,* upon appeal from the judgment entered in that specific performance action on June 3, 1981.

We need not determine the legal effect of the court's April 24, 1981, verbal "order", for, re-gardless of its legal effect, Brudvig relinquished possession of the land because of it and has been able to litigate his right to crop proceeds produced on the land in 1981.